66 So.2d 141

### STATE v. GILL.
I Div. 537.

Supreme Court of Alabama.
June 18, 1953.

Si Garrett, Atty. Gen., and A. J. Harris, Asst. Atty. Gen., for appellant.

Austill & Austill, Mobile, for appellee.

STAKELY, Justice.

The State of Alabama (appellant) filed its bill to quiet title to the land involved in this suit aggregating about 55.91 acres against Sidney W. Gill (appellee), who was the owner of the littoral or riparian land fronting on the west front of Mobile Bay in front of and adjoining whose land the spoil or alluvion was dumped and deposited by the United States Government, as will be hereinafter shown. Sidney W. Gill answered the bill of complaint and alleged that the title to the land reposed in him and not in the State of Alabama and prayed that the answer might be taken as a cross-bill. The court denied relief to the State of Alabama and granted the relief sought by Sidney W. Gill, decreeing the title to the land to be in him. The appeal here is from the foregoing decree.

The real estate described in the complaint is that type of realty known as artificial, unnatural, man-made accretion or reclamation. The accretion or reclamation was the result of certain dredging operations undertaken by the government of the United States in constructing a ship channel lo-cated south of and adjoining the property of Sidney W. Gill on the west shore of Mobile Bay. The channel was constructed for the purpose of removing ammunition from a government ammunition dump known as Theodore Dock, the dock being located on the west shore line of Mobile Bay a short distance north of the mouth of Deer River in Township 6 South, Range 1 West. The channel from which the alluvion was dredged was begun by the United States Corps of Engineers on the 22d of April, 1942 and completed on the 12th of November, 1942. The material dredged from the channel in Mobile Bay to the dock was placed on both sides of the channel and basin, extending from the high ground of Sidney W. Gill some distance out into Mobile Bay. Work was started at the outer or eastern end of the channel and continued therefrom to the shore.

The realty of Sidney W. Gill is situated on the west shore of Mobile Bay immediately north of the aforesaid dock. His original littoral or riparian rights have been destroyed by the formation of the aforesaid artificial, unnatural, man-made accretion caused by the dredging extending eastwardly from the shore line into Mobile Bay. In other words, in the course of the dredging operations which consisted of pumping of sand and silt from the bed of the waters adjacent to the original holdings of Sidney W. Gill onto and abutting his real estate, certain sand and silt removed from the bed was deposited along and out from his shore line.

Attached to and made a part of the agreed statement of facts is a plat showing in detail the original coast line on which Sidney W. Gill enjoyed quiet and peaceful possession as a riparian or littoral owner and the land which has been artificially placed adjacent to it in the manner described, this latter area being designated on the map as spoil dumps numbered 1 and 2.

There is no dispute as to the title of Sidney W. Gill to the real estate adjoining the man-made land, which is the subject of this suit. The unnatural accretion or reclamation is now high, solid, firm ground covered with grass, shrubs and trees and of sufficient elevation to be and remain entirely

above the mean high tide of the waters of Mobile Bay.

The United States Government proceeded to dump and deposit the aforesaid mud, soil and silt in front of the land of Sidney W. Gill on the shore without any permit from him and without payment to him of any compensation. Sidney W. Gill has made no request either in writing or orally to the Federal Government or to any agency, board or bureau or court of the United States of America for payment or compensation for damages to him because of the dumping or depositing by the government of the aforesaid mud, soil and silt in front of his land or on his shore.

■■ At the outset we think it well to say that the law of Alabama governs the rights of the parties to this suit with reference to the determination of the title of riparian or littoral owners to the increase of the land mass by artificial accretion, which builds out the land from the original shore line. Shively v. Bowlby, 152 U.S. 1, 14 S. Ct. 548, 38 L.Ed. 331.

Upon a careful consideration we have reached the conclusion that the authorities in this state are decisive of the question now before this court. These cases appear to demonstrate the right of riparian owners to artificial accretion increasing the land area by building out from it.

The case of Hagan v. Campbell, 1838, 8 Port. 9, was an action of trespass to try title. The ground sought to be recovered was covered by a wharf. There had been two grants covering the property. During the time intervening between the first and second grants, the marsh land in the river in front of the property had been reclaimed by the owners having ditched and drained the same. The initial grant was bounded by the margin of the river as it was at the time of that grant. The second grant in express terms carried in addition the reclaimed ground. One of the matters in dispute before the court was whether the debated property was within or without the lines of the second grant. The court divided accretion or accession into three classes: (a) Accession made either by a retreating of the river or by the insensible addition of alluvion; (b) Accession made by the "instantaneous casting up of the bed of the stream" above the water-level and against the upland, and (c) Accretions to the upland made by a stranger "without the authority of government," immediately contiguous to the upland so as to exclude the water from contact with the upland, and thus (unless these accretions belong to the upland) deprive the owner of the upland of the opportunity to have the alluvial accretions. Accessions under group (a) would be the property of the upland owner. Accessions under group (b) would be the property of the owner of the bed of the stream, here the State of Alabama. Accessions under group (c) would inure to the benefit of the riparian owner.

In the case at bar we are not concerned with either group (a) or group (b). The instantaneous casting up of the bed of the river or other water, contemplated, is that accomplished by sudden convulsion of nature acting on the instant. It appears that the present case falls within group (c). In the case at bar the artificial accretions are the result of the actions of a stranger to the title, namely, the United States of America. The United States had the implied sanction of the owner of the bed, the State of Alabama, but this sanction was not for the purpose of raising above water level the bed which was the property of the State, but was to improve the right of navigation, which was a paramount right residing in the United States.

The case of Mayor, etc., of Mobile v. Eslava, 1839, 9 Port. 577, involved lots east of Water Street in the City of Mobile. At the time of the grants on which the respective parties based their respective claims of title, what is now Water Street and the land east of it was "almost, if not entirely unreclaimed." In the case here mentioned a consideration of the rights accruing to the upland owner by accretion did not seem to be necessary to a determination of the cause, because the description of the lots did not bound them on the east by the river, but by a fixed boundary. Yet there was considerable testimony showing the artificial reclamation of the land and discussion of it in the opinion. At that time much

of the water front of Mobile had been shifted forward as much as two blocks, but this was not by the insensible accretion of alluvion, but the active work of men. In this connection the court said:

"Though the City of Mobile existed as a town long anterior to the treaties of *St. Ildefonso* and *Paris,* yet even since the latter period, extensive reclamations have been made of the shore of the river which bounds it on the east, as well by alluvion, as by the employment of artificial agents. In this way, several streets have been added in the eastern part of the city, running north and south, so that at this time, the principal seat of commercial business is on ground rescued from a bed of water, since the Spanish authorities yielded the possession to the United States. Among these new streets, is Water Street,— * * * in eighteen hunderd and twenty-four, it was probably the most eastern street throughout the entire front of the City,—at any rate, there was none east of it in front of Fort Charlotte." Mayor, etc., of Mobile v. Eslava, supra.

In these early cases it does not seem to have been thought by this court that the title to the made-land that constitutes the old water front of Mobile reposed in any other than the upland or riparian owner in front of whose initial fast-land the made-land was extended.

The case of Abbot's Ex'r v. Doe ex dem. Kennedy, 1843, 5 Ala. 393, was an ejectment suit to recover land that was reclaimed from the water and filled up by defendant's testator or those under whom he claimed. The property adjoined immediately to the east lots that the defendant showed title to, which lots bordered on the margin of the river. The defendant's insistence was that he had title to these reclaimed lots by reason of the artificial accretions out from the upland lots to which he had title. The defendant was Abbot's executor. The first question asked by the Court is, "1. What right did those under whom defendant's testator claimed, acquire to the shore in virtue of their purchase of the contiguous land?" Later in the opinion the court again repeated the question and made answer as follows:

"* * * the inquiry is, whether the purchasers of the Fort Charlotte lots, in virtue of a riparian proprietorship, became entitled to the premises in controversy. From what we have already said, it results, that no subsequent grant by the government can operate to divest the defendant's right to alluvion, or change his boundary by interposing another proprietor of the soil between his land and the water."

While the reference is to the defendant's right to alluvion, the facts in the case show clearly that what was intended was right to the made-land, which as already noted, was reclaimed by filling up.

The case of Doe ex rem. Kennedy v. Bebee, 1845, 8 Ala. 909, involved lots in front of the site of Old Fort Charlotte. With respect to the land in controversy in the case, which was ejectment, it was said:

"The line of the fort lots was extended east, below highwater mark, but since their sale Water Street has been laid off east of them and the land *reclaimed by art,* and between this street and the channel of the river, and in front of the lot of which the defendants are proprietors, the land in controversy is located." (Italics supplied.)

The plaintiff asked the court to charge the jury that the limits of the upland lots could not be extended by improvements made by them as riparian proprietors. The court refused to give this charge and instructed the jury that the case of Abbot's Ex'r v. Doe ex dem. Kennedy, 5 Ala. 393, hereinabove referred to, was decisive authority against the plaintiff's right to recover. The jury accordingly returned a verdict for the defendant and this court affirmed the action of the trial court. This last mentioned case went to the Supreme Court of the United States where it is reported as Doe ex dem. Hallett & Walker v. Beebe, 13 How. 25, 14 L.Ed. 35. The decision of the Supreme Court of Alabama was affirmed by the Supreme Court of the United States.

In Doe ex dem. Pollard's Heirs v. Greit, 1845, 8 Ala. 930, the land in controversy was

between the water front and the river and was made by "filling up the marsh by Tankersly or those claiming under him; some of the low ground was reclaimed in 1822 and much more since that time." This was an action in ejectment. Greit was the tenant in possession. His landlord held in trust for Gertrude Tankersly, whose husband had reclaimed the property by filling up the marsh, as heretofore shown. The plaintiff lost his suit and again the Supreme Court of Alabama affirmed the lower court.

The case of Doe ex dem. Kennedy's Ex'rs v. Jones, 1847, 11 Ala. 63, was an action in ejectment to recover the wharf and dock at the foot of St. Louis Street. The property was on the east side of Front Street. In 1819 when Alabama became a state, the west margin of the river at St. Louis Street at ordinary high tide was about one-third of the way up toward Royal Street from Water Street. From the margin out to the east of Front Street, where the wharf was in 1847, had been reclaimed by filling the streets by the city, and the privately owned property by the proprietors of the adjacent lots. The defendant had the wharf under a lease from the city. Among the questions debated was the title of the City of Mobile to St. Louis Street as it was extended eastwardly from the original shore line by artificial means. With reference to that question the court said:

"In respect to the accretions at the eastern end of St. Louis Street, or the reclamations by human efforts, we think that they become a part of the street, as the city extended its limits eastward, across the marsh, toward the river; quite as much as if the extension had been embraced by the original dedication. The location of Mobile, the extensive flat between the channel and the bank of the river, over which the tide flowed, the deleterious effect upon health, and the hindrance to trade, doubtless suggested the idea at a very early day, of making reclamations from the shore, as the commerce of the city furnished inducements to such improvements. This is but a reasonable and natural assumption, and authorizes the conclusion, that by dedicating the streets running east to the use of the town, and the public, to the margin of the shore, the marsh between the shore and the river was in like manner yielded up, as the wants of the community required its use."

While in the case last mentioned the owner was a municipal corporation as distinguished from a person or a private corporation, this does not in any way affect the reasoning or the holding.

From the foregoing authorities it seems clear that the rights of Sidney W. Gill to the lands in controversy hinge on his ownership of the land as a nucleus or basis from which to build and attach the land added by artificial accretion by the dredging of spoil deposits. There has been no question in this case as to his ownership of the land to the original shore line.

In addition to the cases decided by this court we note the following. The Supreme Court of the United States decided a case in 1874 which involved title by accretion by artificial causes. In this case the United States constructed a dike in the Mississippi River. As a consequence about a mile below sand bars were formed which then joined with the mainland. Congress made a grant of this made-land to the State of Illinois and the State of Illinois in turn granted the made-land to St. Clair County. The upland owner claimed the made-land as an accretion belonging to the riparian owner. The issue before the court was that "accretions could arise only from natural causes and did not apply in this case due to the fact that the causes were artificial." The Supreme Court of the United States said:

"Whether it is the effect of natural or artificial causes makes no difference. The result as to the ownership in either case is the same. The riparian right to future alluvion is a vested right. It is an inherent and essential attribute of the original property. * * *

"* * * We are of the opinion that the United States never had any title to the premises in controversy, and that nothing passed by the several acts of Congress and of the legislature of Illinois. * * *" County of St.

Clair v. Lovingston, 23 Wall. 46, 23 L. Ed. 59, 64. See, also, Lovingston v. St. Clair County, 64 Ill. 56, 16 Am.Rep. 516.

In 45 Corpus Juris, p. 512; 65 C.J.S., Navigable Waters § 113, it is said:

"Where land under water is lawfully reclaimed, the reclaimed portions become integral parts of the owner's adjoining land, and his title will extend at least to the new high-water mark."

In 45 Corpus Juris, p. 526, it is said:

"Unless restricted by statute the right to alluvion does not depend upon whether the additions to the soil resulted from natural or artificial causes, and the riparian owner is entitled to accretions when created by artificial conditions created by third persons in which he has no part." See, also, 65 C.J.S., Navigable Waters, § 82.

In the case at bar there was dredging in Mobile Bay and depositing the mud and sand from the dredging on the shore of the shallow waters extending out into the bay. If this had been done by slow, gradual and imperceptible additions to the shore line, this would be called "accretion." Without doubt under the common law the legal title of such accretion would vest in the riparian owner. It is obvious that we do not have in the case at bar an accretion by any slow or imperceptible processes. It has been suggested that the speeded up, artificial accretion, such as we have in the present case, could well be called "streamlined accretion," or perhaps a reclamation.

It seems to us that the Alabama cases which we have discussed indicate that where there is what we have termed a streamlined accretion, as brought about in the case at bar, title to such made-land is conferred upon the upland owner, subject only to the paramount rights of the United States and the State in aid of navigation. We understand that the title to the bed or bottom beneath navigable waters is in the state, but this is a title to the bed as a bed and not to the individual grains of sand or lumps of mud that constitute the land making up the bed. Consequently there is no title inherent in a gallon of fluid mud, silt or clay that comes from the bottom and flows through the pipes of an hydraulic dredge to its final resting place in the new land that it makes. The state still owns the title to the bed beneath the navigable waters, but the made-land being added to the property of the riparian or littoral owner becomes his property.

The decree of the lower court must however be corrected in one respect. Sidney W. Gill was granted relief under the cross-bill filed by him. Under section 14 of the Constitution of Alabama of 1901, the state cannot be made a defendant in any court of law or equity and this provision of the constitution is as applicable to cross-bills seeking affirmative relief against the state as to original bills. Holmes v. State, 100 Ala. 291, 14 So. 51. However the state brought the original bill in this case and under the statute the defendant must specify in his answer the title, claim, interest or encumbrance which he claims with reference to the property described in the original bill. This is what was done in the present case and while no relief can be granted Sidney W. Gill on his cross-bill, it is proper to recognize on his answer his title to the property, if he has title. Whittaker v. Van Hoose, 157 Ala. 286, 47 So. 741. We have shown that he does have title to the property and recognize it. In other words, instead of granting him relief on a cross-bill, relief is granted to him on his answer and this is no violation of the constitutional provision.

We, therefore, conclude that the decree of the lower court as here modified should be affirmed.

Modified and affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.