Xidis, et ux. *v.* City of Gulfport, et al.

May 3, 1954

No. 39068 63 Adv. S. 92 72 So. 2d 153

*Ebb J. Ford, Wm. G. Hewes,* Gulfport, for appellants.

*Eaton & Cottrell, R. R. Buntin, Charles R. Galloway,* Gulfport, for appellees.

Holmes, J.

The appellees began construction on a project for the improvement, enlargement and development of the Port of Gulfport and the extension of its harbor and port facilities, including the construction of a small craft commercial harbor south of the shoreline and in front of the property of the appellants on which they resided and operated a restaurant known as Angelo's Restaurant. In furtherance of the project, the appellees proceeded with the construction of the small craft commercial harbor, and erected a bulkhead and breakwater extending out from the sea wall and south of the shoreline, and engaged in dredging and filling in the area between the bulkhead and the sea wall with large quantities of sand.

The appellants filed their bill in the Chancery Court of Harrison County alleging that the construction of the improvements then in progress in front of their property would result in depriving them of their riparian and littoral rights which they had theretofore enjoyed, such as access to the water, boating, bathing, fishing, crabbing, floundering, shrimping, and the view of the sea and natural breezes from the sea, and would further result in damaging them and their property and in depriving them of their property without due process of law and without compensation in violation of their constitutional rights. The appellants further charged that the appellees were without authority to expend the funds derived from a bond issue issued to provide funds for the further improvement and development of the Port of Gulfport for

the reason that sufficient notice of the purposes for which the bonds were issued was not given to the qualified electors prior to the bond election at which the qualified electors approved the issue. The appellants prayed injunctive relief, including a mandatory injunction requiring the removal of such structures as had already been placed in front of their property.

The appellees answered, denying the allegations of the bill, and denying particularly that the appellants were the owners of riparian or littoral rights, or that the construction and improvements would result in damage to the appellants or their property, or that the same constituted a taking of their property without compensation in violation of their constitutional rights. The appellees averred that they were authorized to make the improvements by virtue of conveyances from the Gulf and Ship Island Railroad Company and the Illinois Central Railroad Company and by statutory authority. The appellee also averred that pursuant to the authority of Chapter 743 of the Mississippi Laws of 1948, the City of Gulfport, upon the initiation of the Gulfport Port Commission, issued and sold bonds to the amount of $1,750,000, being a part of an authorized issue of $2,250,000, to provide funds for the further improvement and development of the Port of Gulfport, and that in making such improvements the City of Gulfport and the Gulfport Port Commission were acting under such and other statutory authority.

The appellants undertook to show by their proof the following: That in about the year 1935, they became the owners of Block 209 of the City of Gulfport, on which has since been located their residence and a restaurant operated by them under the name of Angelo's Restaurant; that the south line of this property fronts on U. S. Highway 90, which is a two-lane highway, each lane being 25 feet in width and the lanes being separated by a neutral strip 8 feet in width; that the appellants have expended large sums of money in advertising their restaurant

property, representing it to be on the beach; that the construction of the improvements undertaken by the appellees will deprive them of riparian and littoral rights which they possess, and which they have heretofore enjoyed, such as access to the sea, boating, bathing, fishing, crabbing, floundering, shrimping, and the view of the sea and natural breezes from the sea, all of which the appellants claimed to be an asset to their restaurant business and an attraction to patrons of the restaurant; that such construction and improvements would subject the property of the appellants to greater storm hazards; that the dredging and filling in of the area with large quantities of sand caused the sand to blow into the restaurant of the appellants, necessitating keeping closed the windows of the restaurant to the great discomfort of appellants and their patrons; that the breezes over the sand area were hot as compared with the cool of the breezes blown over the water; that the property of the appellants would be depreciated in value by reason of the improvements undertaken by the appellees; that the appellants complained to both the City of Gulfport and the Gulfport Port Commission protesting against the proposed improvements and advising them of the claimed damage to their property; that the notice given by the appellees of the proposed bond issue failed to fully inform the qualified electors of the nature and extent of the improvements to be made and the structures to be built; that no compensation has been paid to the appellants for the alleged damage to their property.

The following appeared from the evidence introduced on behalf of the appellees: By Chapter DXLII of the Mississippi Laws of 1882, the Gulf and Ship Island Railroad Company was incorporated. By Section 2 of the act of incorporation, the company was authorized "to locate, construct, manage, control, maintain, equip, own, use, and operate its railroad at such point as may be determined by said company, from a point on the shore of the Mississippi Sound in this State, and in a northerly

direction at or near Jackson, Hinds County, Mississippi, or other points on the Chicago, St. Louis and New Orleans Railroad, and to receive and transport persons and property upon said road. . . .''

By Section 17 of the act of incorporation, there was conferred upon the company ''the right, power and authority to reclaim the submerged lands of said Mississippi Sound for a distance of one-half mile in either direction, east and west, from the point of intersection of said line of railroad with the waters of said Sound, extending six miles from the shore to the present mainland, in a southerly direction, to take, have and to hold said lands so reclaimed and to enjoy use, and control the same to a special use and benefit of said company; to lease, release, sell, convey, mortgage or otherwise dispose of the same; to locate, construct and thereafter to own and maintain and use suitable walls, piers, breakwater basins or depots or other appurtenances, appendages, and buildings thereon necessary for the loading and unloading, receiving and discharging freight and passengers from seagoing, lightering and coasting vessels.'' Under this grant, the Port of Gulfport was begun and developed. By deeds executed to the City of Gulfport by the Gulf and Ship Island Railroad Company in 1934 and by the Illinois Central Railroad Company in 1949, there was conveyed to the City of Gulfport the area of land here involved, lying south of the shore line, including both reclaimed and the right to reclaim, submerged lands of the Mississippi Sound.

Acting under the authority of Chapter 743 of the Local and Private Laws of the State of Mississippi, approved April 9, 1948, the City of Gulfport, upon the initiation of the Gulfport Port Commission, proposed to issue its bonds to the amount of $2,250,000 for the further improvement and development of the Port of Gulfport. The issue of bonds was approved by the qualified electors at an election held for that purpose and was thereafter duly validated as by law provided. Plans and speci-

fications for the improvements contemplated were placed on file with the City Clerk of the City. Bonds to the amount of $1,750,000 of this issue were sold and the harbor improvements were then begun consisting of dredging and filling in the area south of the shore line in front of the property of the appellants, and building a bulkhead and breakwater, and such improvements were in progress and partially completed at the time of the hearing of this cause. According to the testimony of officials of the City of Gulfport and the Gulfport Port Commission, there was no present intention on the part of either the City or the Commission to lease any part of the reclaimed area for the erection of buildings or structures thereon for purely commercial purposes wholly disassociated from the development of harbor and port facilities, or for any purposes other than the improvement and development of the port and its facilities. These officials further testified that while it might become necessary to lease a part of the area in front of the property of the appellants for the erection of commercial structures if the revenue to be derived therefrom should be needed to meet maturing bonds and interest, it was not presently contemplated that such would become necessary, or that such would be done, and that there were no pending negotiations therefor.

The appellants contended that the conveyances by the Gulf and Ship Island Railroad Company and the Illinois Central Railroad Company to the City of Gulfport are null and void and ineffective to vest in the City of Gulfport the right to proceed with said improvements insofar as the appellants are thereby deprived of their riparian or littoral rights. They further contended that the statutes relied upon by the appellees as authority for the construction of said improvements are invalid if construed to authorize the City and the Commission to proceed with said improvements, since such improvements would result in damaging their property without compensation in violation of Section 17 of the Mississippi

Constitution, providing that private property shall not be taken for public use without compensation.

The appellees contended that the title to submerged lands below the shore line established by the high tide mark in the Mississippi Sound, if not vested in them by virtue of the aforesaid conveyances, is vested in the State of Mississippi, and that if the appellants have any riparian or littoral rights therein they are subordinate to the rights of the State, and that the State, through the legislature, has duly granted to the City of Gulfport the right to make the improvements contemplated in the construction of the small commercial craft harbor by the enactment of Chapter DXLII of the Mississippi Laws of 1882, Chapter 743 of the Local and Private Laws of Mississippi of 1948, and Section 7558 of the Mississippi Code of 1942, conferring upon the corporate authorities of a municipality in which there is situated a harbor that is a port of entry, the power to construct all needful improvements in such harbor, including the deepening of any part of said harbor and/or extending, enlarging or adding to the same by dredging in any direction, including inland.

At the conclusion of the evidence, the chancellor held that the deeds through which the appellees claimed authority to construct the improvements in question were valid and effective to vest such authority in the appellees, and that the statutes under which the appellees asserted authority to make such improvements were valid, and that the bonds issued for the port development were lawfully issued and valid, and that the appellees were duly authorized to construct the small craft commercial harbor, together with any other structures necessary and useful in making improvements to the Port of Gulfport and its facilities, but that the appellees were without right to use the property except to the extent that it might be necessary for port facilities, and further that the appellees acquired no right through its sources of title to erect structures for use by themselves or others

through them for purely commercial purposes. The chancellor further held that there was no present intention on the part of the appellees to lease any of the property for commercial purposes, but in view of the fact that officials of the City of Gulfport and the Gulfport Port Commission had testified that it might become necessary to lease a part of the area in front of the property of the appellants for the erection of commercial structures if the revenues to be derived therefrom should be needed to meet maturing bonds and interest, the chancellor rendered a decree containing the following injunctive order: "That the defendants be and they are hereby enjoined from hereafter erecting or permitting the erection of any such structures on the premises in front of complainants' property except such as shall be necessary and proper in the development of the port facilities of Gulfport." From this decree, the appellants prosecuted this appeal, complaining of the failure of the chancellor to order the issuance of a mandatory injunction to require the appellees to remove the structures already built by the appellees, and the appellees prosecuted a cross-appeal, assigning as error the failure of the chancellor to wholly dismiss the original bill of the appellants.

The contentions of the appellants on this appeal may be embraced in the following: (1) That the appellees were without authority either by virtue of the statutes or the several deeds through which they claimed to construct the small craft commercial harbor and to make the improvements in question in front of the property of the appellants; (2) that the appellees were without authority to expend the funds from the bond issue for the reason that sufficient notice of the purposes of the bond issue was not given to the qualified electors prior to the bond election at which the qualified electors approved the issue; and (3) that to permit the construction of the improvements referred to without compensating the appellants in damages would be to violate Section 17 of the.

Mississippi Constitution providing that private property shall not be taken for public use.

In considering the first of these contentions, we assume, without deciding, that the appellants are riparian owners and possess riparian and littoral rights, and that the aforesaid conveyances to the City of Gulfport were ineffective to vest in the City the right to make the improvements in question. Ample authority to reclaim the land below high tide mark in front of the property of the appellants and to construct thereon the small craft commercial harbor and other structures for the purpose of improving and enlarging the Port of Gulfport and as an aid to navigation was granted by the State through the several statutes relied upon by the appellees. ▮▮▮ It is generally recognized that the soil below navigable waters belongs to the State and that the State holds the same in trust for the benefit of the public. In 65 C. J. S., p. 146, it is said: ''The rights of a riparian or littoral owner to participate in public navigable waters is subject to public control or regulation and to certain public rights.'' Again in 65 C. J. S., p. 157, it is said: ''The right of access of a riparian or littoral owner may not prevail as against the State or its grantee in the exercise of a lawful use or purpose and is subject to rules and regulations imposed by the legislature for the protection of public rights.''

We need not, however, explore generally the authorities on this proposition for the reason that this Court, in the cases of Money v. Wood, 152 Miss. 17, 118 So. 357, and State v. Stewart, 184 Miss. 202, 184 So. 44, 185 So. 247, and in the more recent case of James O. Crary and wife v. State Highway Commission, 68 So. 2d 468, has definitely held that the soil below high tide mark underlying the waters of the Mississippi Sound, which embraces the land here involved, is owned by the State as trustee for its people, subject only to the paramount right of the United States to control commerce and navigation, and that the rights of riparian owners are subject to the prior right

of the State to impose an additional public use upon the lands without requiring the payment of additional compensation. In the case of James O. Crary and wife v. State Highway Commission, supra, this Court recognized that the State through the legislature may impose an additional public use upon the lands under the navigable waters of the Mississippi Sound. The improvements here complained of were improvements for the further development and enlargement of the Port of Gulfport and in aid of navigation, and do not contravene Section 81 of the Mississippi Constitution providing that the legislature shall never authorize the permanent obstruction of any of the navigable waters of the State.

It is argued by the appellants that municipalities are dependencies and possess no right of sovereignty, and, therefore, that the City of Gulfport had no right to construct public works on the reclaimed lands in question south of the shoreline and in front of the property of the appellants. The appellants, however, overlook the fact that the legislature in the enactment of Chapter 743 of the Local and Private Laws of Mississippi, approved on April 9, 1948, and the enactment of Section 7558 of the Mississippi Code of 1942 authorized the City of Gulfport and the Gulfport Port Commission to further improve and develop the Port of Gulfport. The city is not acting, therefore, solely in its capacity as a municipality, but as an agency of the State created by statutory authority.

■■■ We are of the opinion that the appellees, by virtue of the statutes hereinbefore referred to and relied upon by them, were authorized to construct the small craft commercial harbor and other improvements in front of the property of the appellants for the purpose of improving and enlarging the Port of Gulfport and in extending its port facilities, and that the contention of the appellants that the appellees were without such authority is not well founded under the facts of this case.

 We are unable to agree with the appellants in their contention that the appellees were without authority to expend the funds from the bond issue for the reason that sufficient notice of the purposes of the bond issue was not given to the qualified electors prior to the bond election at which the qualified electors approved the issue. There are several answers to this contention of the appellants: One is that the notice in connection with the issuance of the bonds gave notice that the bonds were to be issued for the further improvement and development of the harbor, and according to the proof, this is the only object to which the proceeds of the bonds are being applied or are intended to be applied. There is no evidence that there is any present intention or purpose on the part of the City or the Commission to use the proceeds of the bonds in furtherance of purposes other than for the development and improvement and enlargement of the port. Another answer to this contention of the appellants is that the chancellor has found in upholding the validity of the bond issue that sufficient notice was given and there is ample evidence to support this finding. The testimony for the appellees showed that the plans and specifications for the improvements were on file in the city clerk's office prior to the giving of the notice for the bond election, and that such plans and specifications fully showed the nature, extent and type of improvements contemplated. There is still a further answer to this contention of the appellants and that is that this is not a taxpayer's suit. It is a suit by individuals asserting certain riparian or littoral rights. The appellants do not sue for and on behalf of other taxpayers of the municipality, nor do they invite any of the other taxpayers to join them in the litigation. It does not appear either that insofar as the bond issue is concerned it constitutes any invasion of or depredation upon the rights of the appellants separate and distinct from the rights of other taxpayers. This Court has consistently held that in such situation, the suit cannot be maintained as an at-

tack upon the validity of the bond issue. Gaudet v. Mayor and Board of Aldermen of Natchez, 209 Miss. 13, 46 So. 2d 79; Edwards v. Alexander, 216 Miss. 526, 62 So. 2d 882.

It is further contended by the appellants that the act of the City and the Commission in making the improvements results in damaging them and their property and depriving them of their property without compensation in violation of Section 17 of the Mississippi Constitution. This contention of the appellants was answered adversely to the appellants in the case of James O. Crary and wife v. State Highway Commission, supra. There the Court held that the rights of riparian owners were subordinate to the rights of the State insofar as the soil beneath the navigable waters was concerned, and that the use of these lands for the benefit of the public was vested in the State and that the State had the right to impose further and additional public uses upon such property for the benefit of the public and that in doing so the State was not taking private property for public use and that Section 17 of the Mississippi Constitution, therefore, had no application and was not thereby violated.

In the light of the foregoing views, we hold that the chancellor was not in error in declining to order the issuance of a mandatory injunction to require the appellees to remove the structures and improvements already built or in the process of construction.

The appellees on their cross-appeal contend that the chancellor erred in directing the issuance of any injunctive order as against them and in not dismissing the bill of complaint. It is manifest from the chancellor's opinion that in ordering the issuance of an injunction against the appellees, enjoining them from erecting or permitting the erection of structures on the premises in front of appellants' property except such as shall be necessary and proper in the development of the port facilities of Gulfport, it was the intent and purpose to prevent the Commission from leasing any part of the area in ques-

tion for the erection of purely commercial buildings. It is manifest also that he based his decision upon the testimony of the officials of the City and the Commission to the effect that it might become necessary to lease a part of the area for the erection of commercial buildings thereon if revenues to be derived therefrom should be needed to meet maturing bonds and interest. The chancellor found, however, that there was no present purpose on the part of the appellees to lease the premises for purposes other than that necessary and proper in the development of port facilities, and further found that there appeared to be no immediate cause for any present injunctive relief, but he ordered the issuance of the injunction against the appellees "on account of the apparently reserved right or claim of defendants to change their plan of development should same become necessary or advisable in the event of changed circumstances." In this we think the chancellor was in error. The testimony of the officials of the City and the Commission showed clearly that they had no present intention of leasing any part of the premises for the erection of purely commercial buildings thereon, and that it was not contemplated that such would become necessary or that such would be done, and that there were no negotiations pending therefor. It is true that this Court held in the case of Brooks v. City of Jackson, 211 Miss. 246, 51 So. 2d 274, that "the remedy by injunction is preventive in its nature, and that it is not necessary to wait for the actual occurrence of the injury, since, if this were required, the purpose for which the relief is sought would, in most cases, be defeated." That case, however, involved property of the Central Presbyterian Church which had been zoned as residential property. The case was before the Court on demurrer to the original bill which alleged that the Church was attempting to sell the property for commercial use, and the bill sought to enjoin the Church from so doing. The Court held that "the allegation that the Central Presbyterian Church is attempting to sell its

said property for commercial use implies a present intention to so sell it, which intention may, at any time, be translated into action, and thus it constitutes an impending threat of injury to appellants in the use and enjoyment of their property.'' The Court held that such allegations of the bill were sufficient to entitle the complainant to injunctive relief. The decision in the Brooks case, supra, was based upon the determination of the Court that there was a present intention to sell the property for commercial use, which intention might at anytime be translated into action and that this constituted an impending threat of injury.

In 43 C. J. S., pages 436-438, it is said: ██ ''Injunction will not issue in the absence of an actual or presently threatened interference; it is not sufficient ground for an injunction that the injurious acts may possibly be committed or that injury may possibly result from the acts sought to be prevented; but there must be at least a reasonable probability that the injury will be done, if no injunction is granted, and not a mere fear or apprehension, since injunctions will not be granted merely to allay the fears and apprehensions of individuals, which, it has been said, may exist without substantial reasons and be absolutely groundless.''

We do not undertake to define the extent or limit of the authority of the City and the Commission to lease any part of the premises for the erection of commercial structures, and we do not decide that question, ██ but we hold that the proof in this case is insufficient to show any present intention or purpose in the near future to lease any of the premises for the erection of commercial buildings thereon or to use the property for purposes other than in the development of port facilities, such as to constitute an impending threat of injury to the appellants in the use and enjoyment of their property. We are unable to find under the facts of this case any grounds for the granting of any injunctive relief against the appellees, and we are of the opinion, therefore, that

the chancellor was in error in not dismissing the bill of complaint.

It follows that the decree of the court below is affirmed on direct appeal and reversed on cross-appeal and decree rendered here for the appellees and cross-appellants dismissing the bill of complaint.

Affirmed on direct appeal and reversed on cross-appeal and decree rendered for appellees and cross-appellants.

All Justices concur, except *McGehee, C. J.*, who took no part.