## SIDENER, et ux v. CITY OF PENSACOLA.

Circuit Court, Escambia County.

March 19 and June 25, 1958.

122

Richard P. Warfield and Fisher & Hepner, all of Pensacola, for plaintiff.

F. Churchill Mellen, City Attorney, Pensacola, for defendant.

L. L. FABISINSKI, Circuit Judge.

*Opinion, March 19, 1958:* This case, incidentally though not directly, as a case of first impression, brings into question the quality of the title of the city of Pensacola in underwater areas of land lying off shore in Pensacola Bay. The lands have been platted and designated by appropriate numbers.

The title in the lands in controversy—insofar as the state of Florida could legally convey it—has been confirmed in the city of Pensacola.

The city conveyed the lands to Bruce Dry Docks Co. in 1918, which company filled in the lands (previously under water) with waste fill from dredging operations arising from the dredging of a channel to its dry dock.

The company erected improvements on part of the lands, but the portion here in controversy is considered as unimproved property.

From 1919 to 1948 the lands were assessed to the dry dock company by Escambia County, and taxes levied and collected thereon over a large portion of that period. In 1944 the lands were reconveyed to the city for a valuable consideration.

tice . . ."

Consequent upon a foreclosure by the county in 1948, plaintiffs acquired a tax title in 1955—when the fill to which they now claim title had existed for over 35 years.

Plaintiffs' lands border on the shore line of the bay *as it existed in 1903,* and presumably in 1918 prior to the dry dock company's filling operations. Plaintiffs claim the fill created by the company to the present shore line as accretion to their uplands, based on their tax title to the uplands.

There have been no decisions which define the right of the city, under its grant of underwater lands,.to improve such lands by filling in the bottoms and creating land areas thereby. But its grantee undertook to do so, and its right to do so has not been questioned by any one until the present suit was instituted.

If the city cannot itself, or by conveyance grant the right to others fill in such lands, and thereby impair riparian rights of upland owners, such operations would constitute a purpresture, and the upland owners, by timely action might properly treat them as such and seek appropriate relief against such operations.

It seems to the court that, even conceding that an upland owner is entitled to accretions, whether natural or artificial, and even though created by the acts of third parties, he cannot sit idly by, permit another to create valuable improvements in the nature of a purpresture in front of his uplands, upon the lands claimed in fee simple by such other, and later claim such improvements as his own.

There is another principle of the law of riparian ownership which in itself may be decisive of this case. The lands formed in front of plaintiffs' uplands are not true accretions. They were not

formed by the gradual extension of the uplands outward toward the waters, but artificially formed by additions inward from the waters as an incident to the dredging operations which created the lands now claimed by defendant, and are not normally considered as accretions.

It may be true that because the dredging resulted in the formation of lands inward toward the shore not claimed by the defendant, so much of that area fronting the uplands to the boundaries of the

land claimed by defendant may be the property of the plaintiffs. But this it is not necessary to decide in the present controversy. State v. Gill (Ala.), 66 So. 2d 141, appears to hold to the contrary, but in that case the fill was made *without* the implied sanction to raise the bed above water level, text 143, first complete paragraph. In addition, the case cites no authority outside Alabama, and the rule is otherwise in other jurisdictions. Gibson v. Town (1954), 273 Pac. 2d 430, headnote 2. See key number 44 (1), Navigable Waters.

It cannot be doubted that Escambia County for many years recognized the ownership of the lands in controversy in the predecessor in title of the defendant, as did the owner of the uplands prior to acquisition of title by the county. While assessment for taxation does not of itself constitute an estoppel, the many other

circumstances appearing in this case taken together, it seems to the court, do constitute a complete and effective estoppel against plaintiffs and their predecessors in title.

*Final decree, June 24, 1958:* The former opinion of the court is supplemented by the addition of the following—

As the court understands the effect of the Supreme Court in Thiesen v. Gulf. F. & A. R. Co., 75 Fla. 28, 78 So. 491, LRA1918E 718, the city of Pensacola holds title to a portion of the bottoms of Pensacola Bay in trust for the people of the state of Florida. An upland owner whose lands touch Pensacola Bay is vested with all the rights commonly inherent in littoral ownership, sometimes denoted "riparian rights." The city of Pensacola, itself or through its grantees, may destroy these vested rights in carrying out the trust. (By way of *obiter dictum,* it may do this without resorting to the power of eminent domain.)

But in the destruction of these vested rights by the city, a right of compensation arises by operation of law. If the right of compensation is not enforced promptly, the principle of laches and provisions of statutes of limitation may bar such right. But under no circumstances, unless, possibly, by the foreclosure of an equitable lien to enforce compensation, may the upland owner claim title to lands created by the filling in of bottoms adjacent to his lands, either as being accretions or otherwise.

See also as applying, in effect, a statute of limitations, or statute of repose, in a somewhat similar situation, Bridgehead Land Co. for Use and Benefit of River's Edge v. Hale, 145 Fla. 389, 199 So. 361, and as to right of possession of lands filled in by public authority, Marine Ry. & Coal Co. v. U. S., 257 U. S. 47, 42 S. Ct. 32, 66 L. ed. 124, aff'g judgment (1920) 265 Fed. 437—the latter of which will be read with especial interest, as it takes a view different from that of our own Supreme Court in certain particulars.

Cases on the comparative rights of public authorities and private persons, as to interference with riparian rights, are digested under key number 39, Navigable Waters, National Digest System.

Applying the principles stated in the original opinion, and herein, it follows that the temporary restraining order and injunction hereinbefore entered should be, and it is, dissolved; the complaint is dismissed at plaintiffs' cost; and the court reserves jurisdiction to grant such orders and decrees as equity may require to aid the defendant city in securing any relief that may be proper in its behalf.