HARRISON COUNTY, MISSISSIPPI, et al. *v.* GUICE

No. 42276 May 7, 1962 140 So. 2d 838

*Eaton, Cottrell, Galloway & Lang,* Gulfport; *C. Randall Jones, Jr.,* Pass Christian; *Arnaud Lopez,* Biloxi, for appellants.

*Rushing & Guice,* Biloxi, for appellee.

*Green, Green and Cheney,* Jackson, amicus curiae.

GILLESPIE, J.

This is an appeal by Harrison County, Mississippi, from a decree of the Chancery Court of Harrison County confirming title to property owned by the late Mrs.

Lee Dicks Guice, subject to certain easements herein-after mentioned.

Mrs. Guice purchased certain lots in Iberville Place Subdivision to the City of Biloxi which extended several hundred feet north of the present U. S. Highway 90, and southward from U. S. Highway 90 to the shores of the Mississippi Sound. Mrs. Guice purchased the property in 1923, and she and her family have made their home thereon since said date. The residence is located north of U. S. Highway 90. At the time of the purchase of this property by Mrs. Guice and for some time prior thereto her lot extended southward from U. S. Highway 90 a distance of from 175 to 250 feet, which was high ground not subject to the ebb and flow of the tide. Beyond this to the south was a sand beach about 40 feet in width. Mrs. Guice and her family used the said high lands south of U. S. Highway 90 as a lawn and playground for the children and as access to the beach and to the waters of the Gulf of Mexico for fishing, crabbing, swimming, and boating.

Beginning in 1925, under Chapter 319, Laws of 1924, authorizing Harrison County to construct a sea wall, a sea wall was constructed across the south part of Harrison County. This sea wall was made of concrete and ran parallel to and approximately 50 feet south of U. S. Highway 90, and such wall was constructed in front of the Guice property, and was completed in 1927. In connection with the construction and maintenance of said sea wall, Harrison County acquired an easement giving it the right to construct and maintain said sea wall and ingress and egress over the Guice property south of U. S. Highway 90. The uplands belonging to Mrs. Guice extended approximately 125 to 200 feet south of the sea wall to mean high tide line, and south of that line was a beach of approximately 40 feet in width. Due to the sea wall and the artificial action of the waves caused by the presence of said sea wall, some of the

property south of the sea wall eroded away between 1927 and 1951.

The Legislature enacted Chapter 334, Laws of 1948, authorizing Harrison County to issue certain bonds and to accept certain Federal funds with which to construct certain shore and highway protection improvements. The County was authorized to grant certain requests of the United States Beach Erosion Board of the U. S. Army Engineers in accordance with Public Law No. 727, 79th Congress, Chapter 960, Second Session. Chapter 334, Miss. Laws of 1948, provided that the County would, at its own expense, provide all necessary land, easements, and rights of way.

No additional easement was acquired from Mrs. Guice pursuant to Chapter 334, Laws of 1948. The County already had an easement to repair and maintain the sea wall which it had acquired pursuant to Chapter 319, Laws of 1924. The 1924 law authorized the county "to erect and maintain all necessary sea walls, breakwaters, bulkheads, sloping beach, or other necessary device to protect and preserve such roads, streets, and highways."

As to this right of way easement, see Henritzy v. Harrison County, 180 Miss. 675, 178 So. 322.

Beginning about 1951, the County undertook to borrow funds in accordance with Chapter 334, Laws of 1948, and therewith made certain sea wall and road protection improvements south of the sea wall. Sand was dredged up from the bottoms and pumped in over the area south of the sea wall for a distance of about 200 feet south of the sea wall. This "pumped up" area included some of the original uplands of Mrs. Guice and some of the area formerly covered by shallow water. Since these improvements were made the area or beach has been worked by the County with machines so as to keep the beach area sanitary and free from rubbish and grass, and in good repair.

The County did this latest work in accordance with the only easement it ever acquired from Mrs. Guice, which was the original fifty foot easement. The County never claimed any interest, title or right in and to the lands lying between U. S. Highway 90 and the mean high tide line, except the easement to repair, maintain, and protect the sea wall and highway, and the right of ingress and egress for said purposes. Appellant charged and failed to prove that the County was attempting to control the area south of the sea wall as a public park.

The chancellor entered a decree confirming the title in fee simple in Mrs. Guice's heirs (she died after trial and before entry of the decree below), subject to the easement for U. S. Highway 90, and the easement owned by the county for sea wall purposes with the right on the part of Harrison County to maintain and repair the sea wall and sand fill south of the sea wall as a road and sea wall protection structure, and the right on the part of Harrison County to ingress and egress over and across the Guice land for said purposes. The decree provided that Harrison County's right in and to said land shall be limited to the right to replace, repair and maintain the sea wall and road protection structure, and that such rights shall be exercised in a prudent manner and in such a way as to interfere with owner's enjoyment of said land no more than reasonably necessary to safely and properly maintain, replace, and repair said sea wall and road protection structure. The south line of the land, title to which was confirmed in the Guice heirs, was fixed in the decree as the mean high tide line of the Mississippi Sound as it presently exists. The chancellor denied certain injunctive relief prayed for in the original bill.

The questions presented are: (1) Was Harrison County authorized by virtue of the sea wall easement acquired in 1925 under Chapter 319, Laws of 1924, to construct

in 1951 a sloping beach road and sea wall protection structure? (2) What estate does Harrison County have in the lands south of U. S. Highway 90? and (3) Who owns the fee to the lands created by filling in the shallow bottoms south of the original mean high tide line?

 ■ The Board of Supervisors of Harrison County was clothed with the power of eminent domain to condemn the right of way for the construction of the sea wall, including the protection of the road and sea wall by a sloping beach, such as that constructed in 1951. This authority was contained in Chapter 319, Laws of 1924. Section 1 of the Act gave the sea wall district the power and made it their duty ''to erect and maintain all necessary sea walls, breakwaters, bulkheads, sloping beach, or other necessary device to protect and preserve such roads, streets and highway.'' Section 3 of the Act gave the Board of Supervisors power to exercise the right of eminent domain to procure the necessary right of way. The same section gave the Board of Supervisors power to enact necessary ordinances for the preservation and protection of any such road, sea wall, sloping beach or other device constructed under said Act.

In 1925, the Board of Supervisors of Harrison County exercised said right of eminent domain and condemned a 50-foot strip south of present U. S. Highway 90, and thereafter erected the sea wall on the south 15 feet thereof and filled in the north 35 feet of the right of way. The record conclusively shows that Mrs. Guice then owned the fee to mean high tide with all rights of a riparian or littoral owner, the only burden on her fee being the easement for the highway and the sea wall easement.

When the sloping beach was constructed in 1951 for the protection of the highway and sea wall, the legislature had theretofore enacted Chapter 334, Laws of 1948. That Act authorized Harrison County to issue bonds

and to accept funds from the Federal Government and the use of such funds in the construction of certain road and sea wall protection structures, as already mentioned. The Act also authorized Harrison County to secure the necessary right of way and to acquire the land so as to assure public ownership and administration of the beach. But the County did not acquire any additional right of way from Mrs. Guice, and never acquired Mrs. Guice's land for public ownership or administration. The 1924 Act gave the County authority to do what it did in constructing the road and sea wall protection devices in 1951, but a considerable portion of what was done in 1951 was outside the 50-foot right of way acquired in 1925. Mrs. Guice could have recovered damages for what the County did in 1951, provided she did in fact sustain any damages. That issue is not before us. The proof shows that the County made the 1951 improvements under claim of the 1925 easement. To the extent that it went beyond its previously acquired right, Mrs. Guice waived damages, if any, therefor. The chancellor stated in his opinion that the right of Harrison County to maintain the sea wall and road protection in the form of a sand fill, the improvements constructed in 1951, was based on the doctrine of laches. We hold that laches does not apply to such a situation, but the chancellor reached the correct result. The County claimed the right under the 1925 easement.

## II.

Harrison County has an easement to replace, repair, and maintain the sea wall and the road and sea wall protection structure in the form of a sand fill, constructed in 1951, and reasonable rights of ingress and egress over the Guice lands for the purpose of replacing, repairing and maintaining said structures. There are three reasons why the County has no estate in said lands save the aforesaid easement: (1) The County has never

claimed or exercised any right or interest in said lands except an easement to maintain the sea wall and the road and sea wall protection structure in a safe and sanitary manner; (2) no proceeding whatever has been had to take from Mrs. Guice the fee to the lands involved in this case, nor has she ever conveyed the fee; and (3) the law of Mississippi prohibits the County from acquiring anything more than an easement. Mrs. Guice's title remains perfect, except such use thereof as may be needed to replace, repair, and maintain the sea wall and the road and sea wall protection structure. Whitworth v. Miss. State Highway Department, 203 Miss. 94, 33 So. 2d 612; Dantzler v. State, 190 Miss. 137, 199 So. 367; New Orleans & Northeastern Railroad Co. v. Morrison, 203 Miss. 791, 35 So. 2d 68.

### III.

■■■ The 1951 work done by the County resulted in some of the shallow bottom below mean high tide being covered with sand, resulting in an extension of the Guice uplands. The width of this strip cannot be accurately determined. For the reasons to be stated, we hold that Mrs. Guice became the owner in fee simple of the area added to the Guice land by what may be called accretion due to artificial conditions made by a stranger.

■■■ The State is the owner of the lands in the beds of its shores over which the tides of the sea ebb and flow, and it holds title as trustee for the people. The State has such title to all such beds below mean high tide. Giles v. City of Biloxi, 237 Miss. 65, 112 So. 2d 815; Martin v. O'Brien, 34 Miss. 21; Money v. Wood, 152 Miss. 17, 118 So. 357; Rouse v. Saucier, 166 Miss. 704, 146 So. 291; State v. Stewart, 184 Miss. 202, 184 So. 44; Crary v. State Highway Commission, 219 Miss. 284, 68 So. 2d 468.

■■■ The cited cases also hold that owners of uplands bordering on submerged lands are riparian or littoral

owners. Such owners of the shore line have a peculiar property right correctly referred to as littoral rights. These rights originate in the juxtaposition of land and water, the enjoyment of the land and the water in connection with the land. Littoral rights include the rights of navigation, boating, swimming and fishing; and all these rights depend upon access to the water from the littoral owners' land. Another littoral right is the right to accretions accumulated along the shore over submerged lands.

■■■ So it is manifest that the State's ownership of the bottoms of the submerged lands is essentially ownership of the bottoms as bottoms, and that the owner of the upland has a special property right known as littoral rights, the essential feature of which is direct and exclusive access to the waters adjoining the uplands. ■■■ Littoral rights possess the usual attributes and incidents of property, and are entitled to protection as such. 56 Am. Jur., Waters, Sec. 273, 274. Cf. U. S. v. 11.48 Acres of Land, 212 F. 2d 853.

The strip of land involved in the case at bar which was "pumped up" in connection with the erection of the sloping beach protection device in 1951 is an artificial addition to the Guice uplands erected by strangers to the upland title. We have held either directly or by necessary inference that the owner of uplands bordering tidewater may not extend his lands by artifically reclaiming the state owned bottoms. Giles v. City of Biloxi, supra. This Court has not had occasion to pass upon the question under discussion. We hold that where the owner of the upland had no part in creating the artificial addition or accretion, such owner acquires title in fee to such additional land. Reason and authority recommend this rule.

We have already noted the nature of littoral rights. It is a matter of common knowledge that the littoral rights incident to the ownership of beach front property

along the Mississippi Gulf Coast is the most valuable attribute of such property. If the State, acting through the County, could "pump up" the submerged bottoms adjacent to privately owned uplands, and thereby cut off direct access to the water, it could effectively destroy the value of much residential property as well as commercial and industrial water front property. Such taking of private property could not be accomplished without first paying just compensation. Mississippi Constitution, Sec. 17.

 Ordinarily, accretion means the gradual deposit of alluvial soil upon the margin of the water or the gradual recession of the water. But the term has been applied to the deposit of silt or sand over tidewaters adjacent to shoreline as a result of artificial causes. Various reasons have been given by the authorities for the rule giving the upland owner title to accretions to his land, but the rule is designed to protect the riparian or littoral owner's access to the water. This reason is just as valid when the area adjacent to the upland owner is filled in or pumped up by acts of strangers to the upland title, as it is when the gradual deposit of alluvial soil raises the land adjacent to the upland owner. In either event, the upland owner should be given title in fee to the new land so that he may have continued access to the water. The incalculable mischiefs that would follow if a riparian or littoral owner is liable to be cut off from access to the water, and another owner sandwiched in between him and it whenever the water line is changed, are self-evident. Tiffany on Real Property, 3rd ed., Chap. 28, Sec. 1219; State v. Gill, 259 Ala. 177, 66 So. 2d 141; 56 Am. Jur., Waters, Secs. 273, 274; Forgeus v. Santa Cruz County (Cal.), 140 P. 1092; Cf. Rule, 134 A. L. R. 468; Michaelson v. Silver Beach Imp. Assn. (Mass.), 173 N. E. 2d 273; 65 C. J. S., Navigable Waters, Sec. 82, page 177; 56 Am. Jur., Waters, Sec. 486, page 899. Any other rule would be manifestly

unjust and would ". . . unreasonably interfere with
the riparian proprietors' right of access to and from
such waters and the reasonable use thereof as well
as of the land subject to tidewater." State, ex rel Rice
v. Stewart, 184 Miss. 802, 184 So. 44, 185 So. 247.

In Crary v. State Highway Commission, supra, the
Court held that the State may impose additional public
use on the lands under tidewaters. But the bridge in
that case did not take any of Crary's land nor interfere
with access to the water. That case is no authority for
any proposition involved in the case at bar except that
it sustains Harrison County's claim that the 1924 statute
gave it authority to construct the road and sea wall im-
provement structure in 1951 as an additional burden
authorized by statute. Crary could not claim damages
because there was no interference with his access to the
water. Likewise, in the case of Xidis v. City of Gulf-
port, 221 Miss. 79, 72 So. 2d 153, the Court upheld the
right of the City of Gulfport to construct a harbor de-
velopment in aid of navigation, in accordance with the
statute. The opinion in Xidis cannot be understood un-
less the pleadings are carefully considered. Injunctive
relief only was sought in that case and that relief could
not be granted because the state was exercising the para-
mount right of aiding navigation in filling in the bottoms
under tidewater. Xidis did not seek damages for inter-
fering with his right of access to the water; nor did
he claim the fee to the lands artificially created when
the City of Gulfport filled in the bottoms between the
sea wall and the retaining wall of the harbor. Some
of the statements made in *Xidis* are dicta. When *Xidis*
is properly compared with the case at bar the two cases
are in harmony. Both recognize the State's right to
impose additional burdens on the State-owned bottoms
below mean high tide. In neither case did the littoral
owner claim damages for interference with access to
the water. Only in the case at bar did the owner claim

the fee artificially created by filling in the bottoms adjacent to the upland owner.

Other facets of the case are argued. What we have said disposes of all questions.

Affirmed.

*McGehee, C. J.,* and *Ethridge, McElroy* and *Jones, JJ.,* concur.