## UNITED STATES v. CERTAIN PARCELS OF LAND IN ALAMEDA COUNTY, CAL., et al. (two cases).

### Nos. 21930–L, 22084–S.

District Court, N. D. California, S. D.

Dec. 13, 1943.

See, also, 53 F.Supp. 143.

M. Mitchell Bourquin, Sp. Asst. to the Atty. Gen., for plaintiff.

Charles A. Beardsley and W. Reginald Jones, both of Oakland, Cal., for defendant City of Oakland.

Robert W. Kenny, Atty. Gen., of State of California, and Lucas E. Kilkenny and R. S. McLaughlin, Deputy Attys. Gen., for defendant State of California.

Donahue, Richards & Hamlin, of Oakland, Cal., and Brobeck, Phleger & Harrison, of San Francisco, Cal., for defendant Key System.

ST. SURE, District Judge.

The Government sued in action No. 21930–L to condemn approximately 149 acres of land in the City of Oakland for use by the United States Army in connection with the establishment of the Oakland Port of Embarkation. Thereafter it filed a second action (No. 22084–S) to condemn an additional 69 acres for the same purpose. Both proceedings were instituted under the War Purposes Act of 1917 as amended, 40 Stat. 241 and 40 Stat. 518, 50 U.S.C.A. § 171.

At the time each complaint was filed an order of this court was made granting the Government the right to immediate possession of the lands described in the respective complaints. The order in each case recites among other things that the United States has made adequate provision for the payment of just compensation for the property by virtue of the appropriation made by Congress therefor and that "it shall not be necessary that the United States of America deposit, or cause to be deposited, any sum or sums of money, or other form of security of any kind or nature for the purpose of securing the payment of just compensation to the party or parties entitled thereto", and directs the United States Marshal to place the Government in possession of the property.

Subsequent to the filing of the two actions the Secretary of War determined that it is unnecessary for the Government to acquire title to the land below the line of mean high water. The Government moved to dismiss its actions against that portion of the land and to amend its complaint to exclude such land, pursuant to the request of the Secretary of War addressed to the Attorney General of the United States, as follows: "In view of the fact that certain portions of the lands named in the above mentioned condemnation proceedings are situated below the mean high water line, this Department intends to exercise on behalf of the United States the right to use the land in the exercise of the sovereign power of the United States. It is requested, therefore, that you take the necessary action to dismiss from the proceedings so much of the land as is situated below the mean high water line."

All the land involved in the motions to dismiss was originally below the "Agreed Low Tide Line of 1852" established by Section 3 of Ordinance No. 3099 passed by the City of Oakland on July 10, 1910. Part of the land below the line of mean high water is tideland. The remainder of the land below the line of mean high water is

submerged land of the outer harbor, that is, land below the mean low water line. Part of the land has been reclaimed by defendant Key System under permits granted by the Secretary of War, and by Government contractors in the construction of the port. Part of the dredging and filling by Government contractors was done prior to the filing of the first of the above-entitled actions.

The land was sought to be taken and is now being used for a port of embarkation for military supplies. It is the principal receiving and shipping center for military supplies for transocean shipment to Pacific military bases. Since entering into possession the United States Army has altered the characteristics of the land below the line of mean high water. The navigable portions of the channel of the outer harbor over this land have been widened and lengthened. The width of the present channel is sufficient to provide a turning basin 1,040 feet in diameter for the vessels being loaded. Immediately along the perimeter of the portion of the channel now navigable, and on lands formerly submerged, loading docks have been constructed. The remainder of the area between the present boundaries of the waters of the outer harbor and the line of mean high water has been raised above the present high water level by the deposit of artificial fill. Additional warehouses, rail facilities and open storage yards have been constructed by the Army on this area. Cargo vessels of all types are moored at the docks along the perimeter of the channel and loaded with military supplies for transocean shipment. Some of the military supplies which are stored in the warehouses on said property are rail shipments as well as transocean shipments.

The United States Army is in exclusive possession of the lands described in the complaint, including the lands below the line of mean high water, and has excluded and continues to exclude all persons including defendants from any use or occupancy thereof and intends to continue so to do permanently.

Defendants object to the Government's motion to dismiss.

The Government contends, first, that it has the absolute right to dismiss or abandon the proceedings against part of the property without regard to the reason for seeking such dismissal or abandonment; and second, that apart from the question of the Government's absolute right to dismiss, the court should grant the motion because the land sought to be excluded is already subject to a servitude to the Government for use as a port of embarkation, by virtue of its power to control navigation.

The facts in the above-entitled cases are similar to those in United States v. 412.715 Acres of Land, D.C., 53 F.Supp. 143, this day decided, and the issues of law are identical; the cases were simultaneously briefed and submitted; and the conclusions contained in the decision in United States v. 412.715 Acres of Land are applicable here.

The motions to dismiss and to amend the complaints will be denied.