**UNITED STATES**

v.

**11.48 ACRES OF LAND, MORE OR LESS, IN CLAY COUNTY,**
Fla., et al.

**No. 14742.**

United States Court of Appeals
Fifth Circuit.

May 6, 1954.

William D. Jones, Jr., Sp. Asst. to Atty. Gen., Jacksonville, Fla., Perry W. Morton, Asst. Atty. Gen., Dept. of Justice, Roger P. Marquis, Atty. Gen., Fred W. Smith, Atty. Gen., Washington, D. C., for appellant.

George W. Milam and Donald K. Carroll, Jacksonville, Fla., Milam, McIlvaine, Carroll & Wattles, Jacksonville, Fla., of counsel, for appellees.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

RIVES, Circuit Judge.

In a condemnation proceeding instituted by the United States against appellee, John P. Hall and others, the district court awarded to Hall the sum of $6,500.00 as compensation,

"for the diminishment in market value of those certain untaken uplands described as Lots 5, 6 and 7, Block 1, South Green Cove Springs, according to Plat recorded in Deed Book 'Z', at Page 748, of the Public Records of Clay County, Florida, which accrued thereto by reason of the taking of the riparian rights ap-

purtenant thereto as a result of the taking of the fee simple title of the lands described in Paragraph 4 hereof, all of which are submerged offshore lands lying within the bed of the St. Johns River."

The United States appeals from that judgment.

■ Appellee's uplands were not included in the property condemned. The original petition described a tract of land having an area of 11.48 acres wholly within the river bed and separated from said uplands by an expanse of water. By amendment to the petition the area taken was enlarged so as to embrace, inter alia, the area of the river bed which had theretofore intervened between the high water mark touching the appellee's uplands on the southerly shore of the river and the original tract condemned. The riparian rights of appellee, while accruing from his ownership of uplands, were easements or rights in the river and in the submerged lands condemned in this proceeding. Broward v. Mabry, 58 Fla. 398, 50 So. 826, 830; Brickell v. Trammell, 77 Fla. 544, 559, 82 So. 221, 226. It is conceded by the Government, in brief, that:

"The condemnation of lands in fee simple, and the filing of a declaration of taking of such lands in fee simple, vests in the United States a title free and clear of any interests or easements not specifically excepted from the taking. United States v. Sunset Cemetery, 7 Cir., 1943, 132 F.2d 163, 164. So here, the filing of the complaint (R. 4) condemning in fee the submerged lands adjacent to appellee's uplands and the judgment on the amended declaration of taking (R. 25) vesting in the United States 'any and all outstanding right title and interest in the following described lands' [submerged lands], operated as a taking of all interests in the lands, including the riparian rights of appellee."

Jurisdiction is therefore not to be denied on the ground that the riparian rights were not within the description of the properties condemned. Cf. Oyster Shell Products Corp. v. United States, 5 Cir., 197 F.2d 1022.

Among other riparian rights is that vested by the Riparian Act of 1921, known as the Butler Act, being Chapter 8537, Laws of Florida, Acts of 1921, F.S.A. § 271.01 et seq., to bulkhead and fill in from the shore to the edge of the channel and thereby obtain full title to lands so filled. See Holland v. Fort Pierce Financing & Construction Co., 157 Fla. 649, 27 So.2d 76. That right has been condemned. By the judgment "fee simple title absolute to the lands hereinafter set forth is now vested indefeasible in the United States of America." It was stipulated that the property condemned contained "111.44 acres more or less, approximately 20.34 acres being filled land and the remaining 91.10 acres being submerged land."

It was further stipulated:

"That by reason of the destruction or impairment by the Petitioner of the riparian rights before referred to, the lands described in Paragraph I hereof were diminished in market value as of the date of taking in these proceedings, to the full extent and amount of Six Thousand Five Hundred Dollars ($6,500.00) and said date of taking was and is May 27, 1948."

Appellant concedes in brief:

"That is simply the accepted method of valuing easements and similar rights in lands which are appurtenant to a dominant estate. As the court said in United States. v. Welch, 1910, 217 U.S. 333, 339 [30 S.Ct. 527, 54 L.Ed. 787], ' * * the value of the easement cannot be ascertained without reference to the dominant estate to which it is attached.' Thus in the judgment it affirmatively appears that this diminution in value of the uplands does.

not result from a taking of the uplands, but that the right, if any, to be compensated for such diminution of value arises 'by reason of the taking of the riparian rights appurtenant thereto', which, as we have shown are rights in the submerged lands taken."

The purpose of the acquisition, as described in the petition, was "for use in connection with the U. S. Naval Station, Green Cove Springs, Florida," or specifically, "for berthing of ships in connection with the U. S. Naval Station, Green Cove Springs, Florida." (Letter of Acting Secretary of the Navy attached to the Petition.) Appellee's brief expresses the purpose as that "of providing facilities to store a 'moth ball fleet' of inactive naval vessels."

The United States insists that the loss of appellee's riparian rights results from a legitimate exercise by the United States of its dominant servitude in the navigable waters here involved, citing and relying on Greenleaf Johnson Lumber Co. v. Garrison, 237 U.S. 251, 268, 35 S.Ct. 551, 59 L.Ed. 939; United States v. Commodore Park, 324 U.S. 386, 391, 65 S.Ct. 803, 89 L.Ed. 1017; Bailey v. United States, 62 Ct.Cl. 77, 95–96. The appellee replies that the Government project here involved is not an exercise of its servitude over navigable waters, that the berthing of naval vessels not immediately required for active service "is basically different from the berthing of moving vessels which may be tied up for short periods at a dock for purposes of loading or repairs. The berthing of the 'moth ball fleet' is a potentially permanent storage of the vessels." The appellee cites and relies on Carumbo v. Cape Cod S. S. Co., 1 Cir., 123 F.2d 991; United States v. 412.715 Acres of Land, etc., D.C.N.D.Cal., 53 F.Supp. 143; United States v. Certain Parcels of Land in Alameda County, Calif., D.C.N.D.Cal., 53 F.Supp. 150; Rank v. Krug, D.C.S.D. Cal., 90 F.Supp. 773. Alternatively, the appellee insists that in any event the Government has elected to take his riparian rights by eminent domain and that he is therefore entitled to just compensation citing United States v. Gerlach Live Stock Co., 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231.

We think that the appellee's alternative contention is sound, and, hence, we do not reach the question of whether the use intended by the Government would be a mere exercise of its servitude over navigable waters. Appellee's property was always subject to that dominant servitude. Its exercise involved no taking of private property within the meaning of the Fifth Amendment, and necessitated no condemnation proceeding. The United States has elected to take the fee simple, absolute, and indefeasible title to the lands. As heretofore stated, the judgment provides, "That the fee simple title absolute to the lands hereinafter set forth is now vested in the United States of America." That is more than the Government's authority over navigable waters to which appellee's riparian rights were always subordinate. United States v. Commodore Park, supra, 324 U.S. at page 388, 65 S.Ct. 803. Under that judgment, the United States can place buildings or structures upon the filled lands, using them as an absolute owner, and the appellee is forever denied the right under the Florida Riparian Act of 1921 to acquire a like full title. If the United States should fail to go through with its plans, or, after doing so, should abandon the use of the submerged lands for the purpose for which condemned, appellee would not be restored to the enjoyment of his riparian rights, but the fee simple title would remain vested in the United States. In short, appellee's riparian rights were not simply subjected to the Government's dominant servitude over navigable waters, but those rights were permanently and irrevocably taken by the United States. For such taking the Fifth Amendment guaranteed to the appellee the right to just compensation.

The judgment is therefore

Affirmed.