Rel: July 19, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2024

———————————————

### SC-2024-0059

———————————————

## Lanell Puckett

### v.

## The Board of Trustees of the University of Alabama, for its Division, the University of Alabama at Birmingham Hospital

### Appeal from Jefferson Circuit Court
### (CV-23-900676)

SELLERS, Justice.

AFFIRMED. NO OPINION.

See Rule 53(a)(1) and (a)(2)(F), Ala. R. App. P.

Shaw, Wise, Mendheim, and Mitchell, JJ., concur.

Parker, C.J., and Bryan, J., dissent.

Cook, J., dissents, with opinion, which Stewart, J., joins.

COOK, Justice (dissenting).

Lanell Puckett was severely injured in an automobile accident and received treatment for her injuries at the University of Alabama at Birmingham Hospital ("UAB Hospital"). UAB Hospital subsequently filed a hospital lien in the Jefferson Probate Court ("the probate court") for the full amount of Puckett's medical bill against any settlement or recovery Puckett might be entitled to receive because of the accident.

Puckett ultimately settled her claims against the other driver involved in the accident and her own insurer. Puckett's attorney deposited the settlement proceeds in the attorney's client-trust account pending a resolution of Puckett's dispute with UAB Hospital over the hospital lien. Puckett's attorney attempted to negotiate with UAB Hospital for a reduction in the medical bill associated with the hospital lien, but the parties were unable to reach an agreement. Puckett then filed a complaint in the Jefferson Circuit Court, interpleading the settlement proceeds and asking the circuit court to determine the validity and size of the hospital lien (that is, the reasonableness of the amount charged for the medical services).

The Board of Trustees of the University of Alabama ("the Board"),

which owns UAB Hospital, challenged the circuit court's jurisdiction over Puckett's complaint, arguing that State immunity applied. At the same time that it was invoking State immunity as a jurisdictional bar in the Jefferson Circuit Court, the Board filed its own complaint in a circuit court of a different county about the very same hospital lien. But the Board chose not to name Puckett in its complaint. Instead, the Board named only the insurance carriers who had settled with Puckett (that is, the at-fault driver's insurer and Puckett's underinsured-motorist insurer). The Jefferson Circuit Court ("the circuit court") agreed with the Board's State-immunity argument and dismissed Puckett's complaint. Puckett now appeals that dismissal.

Given the unsettled questions of law raised by this appeal and the curious litigation strategy adopted by the Board, I would have afforded the parties an opportunity to fully explain their actions at oral argument before adjudicating Puckett's appeal.

Nevertheless, based on my review of the parties' briefs, the record, and the relevant law, I respectfully dissent from this Court's affirmance of the judgment dismissing Puckett's complaint. Because the Board commenced a statutory action to perfect and enforce its lien on Puckett's

4

property pursuant to § 35-11-370 et seq., Ala. Code 1975 ("the hospital-lien statutes"), Puckett's subsequent objections to that lien were asserted defensively with regard to a claim asserted <u>by</u> the State -- not a claim <u>against</u> the State. Further, because (1) the Board had already filed its statutory lien in a division of the Unified Judicial System of Alabama and (2) Puckett interpleaded the property subject to that lien with the circuit court, the circuit court acquired in rem jurisdiction to determine questions related to the status of the lien and the attached property. Thus, Puckett's complaint asking the circuit court to determine the validity and extent of the Board's statutory hospital lien against her settlement proceeds does not constitute an action against the State for the purposes of State immunity.

Judicial economy and the efficient administration of justice are served when parties resolve disputes over a hospital lien in one action, rather than clogging our court system with multiple actions that create the danger of conflicting outcomes or even double liability. Below, I describe the legal principles applicable to Puckett's appeal and explain my rationale for concluding that her complaint disputing the Board's hospital lien does not -- in violation of Article 1, § 14, Ala. Const. 2022 --

make the State "a defendant in any court of law or equity." I also write to discuss other possible procedural vehicles for resolving disputes over hospital liens and the opportunity for legislative action to correct the uncertainty in this area of the law.

Facts and Procedural History

On January 27, 2022, Puckett sustained serious injuries in an automobile accident that took place in Jefferson County and was hospitalized at UAB Hospital in Jefferson County. Approximately two weeks later, UAB Hospital -- which is owned and operated by the Board -- filed a hospital lien in the probate court pursuant to § 35-11-371, Ala. Code 1975, one of the hospital-lien statutes, in the amount of $176,685.16 for charges related to Puckett's treatment. Under the hospital-lien statutes, hospitals may assert a lien for "reasonable charges of hospital care" against any settlement or recovery a patient might receive on account of his or her injuries. § 35-11-370, Ala. Code 1975.

Puckett later settled her claims against the driver of the other car involved in the accident, that driver's liability car-insurance carrier, and her own underinsured-motorist insurance carrier. In exchange for a settlement and release of her claims, Puckett recovered $117,666.67 in

compensation. However, because counsel for Puckett and UAB Hospital could not reach an agreement as to the amount of the hospital lien, the settlement proceeds were deposited in a trust account belonging to Puckett's attorney pending resolution of the lien dispute.

On February 27, 2023, Puckett filed an interpleader complaint in the circuit court that included claims for related declaratory and injunctive relief. In the operative complaint at issue on appeal, Puckett asked the circuit court to, among other things,[1] "determine the reasonableness, relatedness and necessity of the medical charges and the validity of the lien as to UAB Hospital."

On June 16, 2023, the Board, which is considered an agency of the State, moved to dismiss Puckett's complaint, arguing that the State immunity afforded by Article 1, § 14, Ala. Const. 2022, prevented the

---

[1]Puckett's complaint additionally alleged violations of the Alabama Constitution's guarantees of due process and equal protection. However, in her brief, Puckett asks this Court to construe those counts "(errantly labelled as constitutional violation claims) [as requests] seek[ing] judicial review of how [the hospital-lien] statute applies in her case and/or a proper injunction …." Puckett's brief at 35. In the analysis below, then, I treat Puckett's complaint as narrowly seeking declaratory and injunctive relief regarding the validity and extent of the hospital lien against her property.

7

circuit court from exercising subject-matter jurisdiction over the complaint.

While the Board's motion to dismiss Puckett's complaint was pending before the circuit court, the Board, pursuant to § 35-11-372, Ala. Code 1975, one of the hospital-lien statutes, sued the other driver's insurer as well as Puckett's underinsured-motorist insurer in the Tuscaloosa Circuit Court.[2] In its complaint, the Board alleged that the defendants had impaired the Board's hospital lien by settling Puckett's claims without first obtaining a release or satisfaction of the Board's lien. The Board did not name Puckett as a defendant in that separate lien-impairment action. Although Puckett questions the Board's action in her appellate brief,[3] the Board never responds or even mentions its own lien-

---

[2]Although not relevant to this appeal, the Board's litigation strategy of commencing its lien-impairment action in the Tuscaloosa Circuit Court is also difficult to understand given that (1) both the accident and the hospital treatment took place in Jefferson County, (2) UAB Hospital filed its hospital lien in Jefferson County, and (3) Puckett filed her interpleader complaint concerning UAB Hospital's lien in Jefferson County and did so before the Board commenced its lien-impairment action against the insurers.

[3]In her brief to this Court, Puckett questions the Board's objection to the circuit court's exercise of jurisdiction over her complaint and underscores that

impairment action in its briefs to this Court. Over the Board's objections, its lien-impairment action has now been transferred to the circuit court.[4]

On December 18, 2023, the circuit court entered a judgment dismissing Puckett's complaint after concluding that State immunity prevented it from exercising subject-matter jurisdiction in this case. Puckett now appeals that judgment to this Court.

<u>Discussion</u>

I. <u>State Immunity Does Not Preclude Puckett's Interpleader Action Disputing the Validity and Extent of the Board's Hospital Lien</u>

---

"[t]he Board itself invoked the jurisdiction of the Circuit Court in Tuscaloosa County to hold the involved insurance companies accountable for complying with legal duties which [the Board] interprets as being mandatory as to its purported lien [e.g., <u>The Board of Trustees of the University of Alabama for its Division, University Hospital v. State Farm Mutual Automobile Insurance Company, et al.</u>, CV-2023-900605 in the Circuit Court of Tuscaloosa County]."

Puckett's brief at 57-58.

[4]Although the briefs submitted to this Court do not reference that transfer, Alacourt -- Alabama's online public court-record database for trial courts -- reflects that the Board's lien-impairment action was transferred to the circuit court in September 2023. See <u>Swindle v. Remington</u>, 291 So. 3d 439, 450 n.5 (Ala. 2019) ("[T]his Court may take judicial notice of a matter of public record.").

a. We have <u>never</u> held that State immunity mandates dismissal of a complaint seeking to dispute the validity and extent of a hospital lien asserted by a State agency

The Board cites no Alabama case holding that an interpleader action concerning a statutory lien filed by a State agency in a probate court is barred by State immunity. Nor has my independent research identified such a case. To the contrary, my research reveals that Alabama's appellate courts have repeatedly reviewed the validity and reasonableness of hospital liens filed by State-operated hospitals in cases that involve a procedural posture similar to that presented here. <u>See</u>, <u>e.g.</u>, <u>Ex parte University of S. Alabama</u>, 761 So. 2d 240, 242 (Ala. 1999) (addressing the merits of lower court's judgment in interpleader action adjudicating a patient's claim for declaratory relief against the University of South Alabama Medical Center); <u>Roberts v. University of Alabama Hosp.</u>, 27 So. 3d 512 (Ala. Civ. App. 2008) (affirming lower court's determination of the amount of charges secured by UAB Hospital's lien against settlement proceeds); <u>Progressive Specialty Ins. Co. v. University of Alabama Hosp.</u>, 953 So. 2d 413 (Ala. Civ. App. 2006) (affirming lower court's judgment in insurer's action seeking declaratory relief against UAB Hospital).

As recently as last month, the Court of Civil Appeals decided an interpleader action involving a hospital lien asserted by the Board. <u>See Board of Trs. of Univ. of Alabama v. Richards</u>, [Ms. CL-2023-0849, June 7, 2024] \_\_\_ So. 3d \_\_\_ (Ala. Civ. App. 2024). In that action -- and as is the case here -- the Board was named as a defendant in an interpleader action that sought a determination of the portion of the patient's settlement proceeds that were owed to UAB Hospital under the hospital-lien statutes. The Board was dissatisfied with the St. Clair Circuit Court's apportionment of the settlement proceeds and appealed the trial court's judgment to the Court of Civil Appeals.

At no point in its appellate briefs in <u>Richards</u> did the Board argue that the underlying case should be dismissed on State-immunity grounds, and the Court of Civil Appeals did not raise the issue of State immunity.[5] Instead, the Court of Civil Appeals recognized that "the trial court <u>had jurisdiction</u> … to determine the amount of the liens at issue."

---

[5]<u>See</u> <u>Swindle v. Remington</u>, 291 So. 3d 439, 450 n.5 (Ala. 2019) ("[T]his Court may take judicial notice of a matter of public record."); <u>Honea v. Raymond James Fin. Servs., Inc.</u>, 240 So. 3d 550, 590 n.26 (Ala. 2017) (Murdock, J., concurring in the result in case no. 1130655 and dissenting in case no. 1130590) (noting that this Court could take judicial notice of briefs filed in another case).

11

Richards, ___ So. 3d at ___ (emphasis added). The Court of Civil Appeals, however, ultimately agreed with the Board that the trial court had apportioned the settlement proceeds incorrectly and remanded the case to the trial court, with directions to enter a judgment allocating a greater percentage of the proceeds to the Board (not to dismiss the case). Richards, ___ So. 3d at ___. In other words, the Board chose not to raise the issue of State immunity but instead argued, on the merits, that it was entitled to a larger award -- and it won.[6]

Although the applicability of State immunity was not expressly decided in the above-mentioned cases, we have held that State immunity is an issue of subject-matter jurisdiction and that appellate courts are "'duty bound to notice ex mero motu the absence of subject-matter

---

[6]Although the Board did not raise the issue of State immunity before the Court of Civil Appeals, the appellees in Richards did ask the Court of Civil Appeals to take judicial notice of "UAB Hospital's practice of asserting contradictory positions in other litigation" and cited the position taken by the Board in the present appeal as an example. See Appellees' brief in Richards at 23-24 n.8 (noting that, in Puckett's appeal to this Court, the Board does not argue that a circuit court's jurisdiction to review the Board's hospital lien can only be exercised when a patient's personal-injury claims have progressed to litigation but that the Board instead contends that it "is immune from being made a defendant in a declaratory action brought under the Hospital Lien statute while claiming protection under that same statute in this matter" (emphasis added)).

jurisdiction.'" Baldwin Cnty. v. Bay Minette, 854 So. 2d 42, 45 (Ala. 2003) (quoting Stamps v. Jefferson Cnty. Bd. of Educ., 642 So. 2d 941, 945 n.2 (Ala. 1994)). By failing to raise the issue of subject-matter jurisdiction ex mero motu, the decisions in the above-mentioned cases imply that a patient's commencing an interpleader action seeking declaratory relief is an appropriate procedural mechanism for determining the validity and extent of a lien asserted by a State agency pursuant to the hospital-lien statutes. And the Board's failure to raise any jurisdictional challenge in Richards (an appeal adjudicated within the last few months) gives rise to the very same implication.

b. Alabama authorities support the conclusion that State immunity does not apply to Puckett's claims disputing the validity and extent of the Board's hospital lien against her property

Not only does the Board point to no controlling authority for the proposition that the circuit court lacks subject-matter jurisdiction over Puckett's interpleader complaint, but Alabama law actually supports the conclusion that State immunity does not deprive the circuit court of jurisdiction over Puckett's interpleader action seeking a legal determination of the status of the property that is subject to the Board's hospital lien.

13

### 1. Alabama's hospital-lien statutes

The Alabama Legislature enacted a carefully balanced and integrated set of statutes to provide for hospital liens. Before directly addressing the circuit court's exercise of jurisdiction over Puckett's claims disputing the validity and extent of the Board's hospital lien, I will provide a brief overview of the statutory scheme that governs the creation, perfection, and enforcement of that lien.

As previously noted, the hospital-lien statutes give a hospital a statutory lien, for its "reasonable charges," against "any and all actions, claims, counterclaims and demands" accruing to the patient as a result of his or her accident. § 35-11-370. Importantly, the lien is a statutory creation that attaches to the proceeds from any settlement of a patient's personal-injury claims. Ex parte Infinity S. Ins. Co., 737 So. 2d 463, 464 (Ala. 1999) (citing Guin v. Carraway Methodist Med. Ctr., 583 So. 2d 1317, 1319 (Ala. 1991)).

The hospital-lien statutes also set forth the method for perfecting a hospital lien. Pursuant to § 35-11-371(c), a statutory lien is perfected when the hospital

> "file[s] with the probate court of the county in which the hospital is located a verified statement setting forth the name

14

and address of the patient, as it appears on the records of the hospital, the name and location of the hospital and the name and address of the operator thereof, the dates of admission and discharge of the patient therefrom, the amount claimed to be due for the hospital care, which shall give full credit for any health care payor payments made, including agreed contractual adjustments, and to the best of the claimant's knowledge, the names and addresses of all persons, firms, or corporations claimed by the injured person, or the legal representative of the person, to be liable for damages arising from the injuries. <u>The claimant shall also within one day after the filing of the claim or lien, mail a copy thereof by registered or certified mail, postage prepaid, for each person, firm, or corporation so claimed to be liable on account of the injuries, at the addresses so given in the statement, and to the patient, his or her guardian, or his or her personal representative at the address given at the time of admission</u>."

(Emphasis added.) Thus, under the hospital-lien statutes, perfection is complete once the claim of lien is filed in the probate court and served by the hospital.[7]

---

[7]I note that this Court has not stated, as it has with other types of statutory liens, that the filing of an action to enforce a statutory hospital lien is a predicate to perfection of that lien. Cf. <u>Lily Flagg Bldg. Supply Co. v. J.M. Medlin & Co.</u>, 285 Ala. 402, 405, 232 So. 2d 643 (1970) ("It seems to be well settled that a materialman's or mechanic's lien ... is not perfected until every requirement of the statutes creating such lien has been complied with, and such lien remains inchoate and loses all force and vitality unless suit is brought and prosecuted to final judgment. <u>United States v. Costas</u>, 273 Ala. 445, 142 So. 2d 699 (1962), and the many cases there cited."); <u>Bailey Mortg. Co. v. Gobble-Fite Lumber Co.</u>, 565 So. 2d 138, 143 (Ala. 1990) ("The final step for perfection [of a statutory mechanic's lien] is to file suit in the circuit court of the county

15

The hospital-lien statutes do not prescribe a specific statutory method for enforcing a perfected hospital lien. However, § 35-11-1, Ala. Code 1975, which applies to hospital liens, provides that

"[t]he statutory modes provided in this chapter [i.e., Title 35, Chapter 11] for the enforcement of liens are not the exclusive modes of enforcing such liens, but are cumulative merely. Any lien may be enforced in the manner provided by statute, if so provided, or by attachment for enforcing liens, or by any similar mode or remedy existing at common law."

(Emphasis added.)

Section 35-11-372, moreover, creates an independent statutory cause of action for impairment of a hospital lien and provides, in pertinent part, as follows:

"Any acceptance of a release or satisfaction of any action, claim, counterclaim, demand, or judgment and any settlement of any of the foregoing in the absence of a release or satisfaction of the lien referred to in [the hospital-lien statutes] shall prima facie constitute an impairment of the lien, and the lienholder shall be entitled to a civil action for damages on account of the impairment, and in the action may recover from the one accepting the release or satisfaction or making the settlement the reasonable charges for the hospital care, treatment, and maintenance. Satisfaction of any judgment rendered in favor of the lienholder in any action shall operate as a satisfaction of the lien. Any action by the lienholder shall be brought in any court having jurisdiction where the property is located (in the district court if the amount is less than $50)."

thereof and may be brought and maintained in the county wherein the lienholder has his or her, its, or their residence or place of business. If the lienholder shall prevail in the action, the lienholder shall be entitled to recover from the defendant, costs and reasonable attorney's fees. The action shall be commenced against the person liable for the damages within one year after the date the liability shall be finally determined by a settlement release covenant not to sue or by the judgment of a court of competent jurisdiction."

§ 35-11-372(b). Thus, by filing its statutory hospital lien, the Board gained new rights: "Upon perfection of the lien in the manner provided in § 35-11-371, the hospital's lien is protected, pursuant to § 35-11-372, from impairment by one settling an action or claim without obtaining a release or satisfaction of the lien." Ex parte Infinity S. Ins. Co., 737 So. 2d at 466.

Finally, § 35-11-373, Ala. Code 1975, one of the hospital-lien statutes, describes a court's jurisdiction to adjudicate matters concerning a hospital lien and provides as follows:

"In any case where the action, claim, counterclaim or demand accruing to the person to whom hospital care has been furnished has been reduced to judgment in a court having jurisdiction thereof, said court shall have full jurisdiction to determine the amount due on the lien on proper written petition by any party interested therein and shall have full power to adjudicate all matters in connection with said hospital lien and to provide by order of the court for the manner in which the proceeds of said judgment shall be distributed. A copy of said petition shall be served upon all

17

> other parties having any right to any part of the proceeds of said judgment and answer and proceedings thereon filed and conducted as provided by law. Any party to the proceedings on said petition shall have the right to appeal to the supreme court or court of civil appeals as in civil cases."

(Emphasis added.) That provision, however, does not address or otherwise limit a court's jurisdiction to determine the validity and extent of a hospital lien attached to the proceeds of a personal-injury claim that was settled out of court by a patient. Thus, § 35-11-373 does not set forth the exclusive method for seeking judicial review of the validity and extent of a hospital lien. See § 35-11-1.

> 2. Puckett's interpleader action is an in rem action that does not implicate State immunity

Although Article I, § 14, Ala. Const. 2022, prohibits courts from exercising jurisdiction over actions in which the State has been "made a defendant," it does not prevent a court from exercising jurisdiction over property under the control of the court.

The term "in rem" is Latin for "against a thing," and is defined as "involving or determining the status of a thing, and therefore the rights of persons generally with respect to that thing." Black's Law Dictionary 947 (11th ed. 2019). In in rem actions, "the named defendant is property …." Id. at 38 (defining "action in rem") (emphasis added). This Court has

18

repeatedly recognized that in rem actions invoke a court's jurisdiction over specific property -- and do not seek personal judgments against any specific defendants. Headen v. Headen, 171 Ala. 521, 528, 54 So. 646, 648 (1911) ("The answer to this contention is that this is a proceeding in rem, in which personal notice is not required.").

Because a court's exercise of in rem jurisdiction is premised on the disputed property before the court -- and not the court's authority over any defendant -- in rem actions also do not implicate State immunity. See City of Conroe v. San Jacinto River Auth., 602 S.W.3d 444, 457 (Tex. 2020) ("We agree with the Attorney General and SJRA that because [Texas Expedited Declaratory Judgment Act] suits concern only in rem rights, immunity does not apply."); see also Alabama Medicaid Agency v. Southcrest Bank, 268 So. 3d 72, 74 (Ala. Civ. App. 2018) (failing to raise issue of State immunity with respect to trial court's judgment determining that State agency had the right to redeem interpleaded property); Alabama Medicaid Agency v. Britton, 306 So. 3d 51, 59 (Ala. Civ. App. 2020) ("[T]he Agency's argument presupposes the conclusions that the Agency's claim to the gross trust corpus is correct on the merits and that immunity means that the Agency's assertion of a claim to

19

property may not be adjudicated in any manner other than in favor of the Agency. Neither <u>Southcrest Bank</u> nor other immunity precedents support such conclusions.").

Here, by filing a verified statement of lien in the probate court, the Board perfected its statutory hospital lien and provided Puckett -- and the other interested parties -- with notice of its intent to enforce its legal claim against Puckett's property. In doing so, the Board brought its lien within the purview of the statutory scheme that governs hospital liens and -- by extension -- the in rem jurisdiction of Alabama's Unified Judicial System. <u>See</u> <u>Snellings Lumber Co. v. Porter</u>, 225 Ala. 164, 166, 142 So. 560, 561 (1932) (recognizing that the attachment and enforcement of a statutory lien "depend[s] upon a compliance, in all substantial matters, with the provisions of the statute to which it owes its existence"); <u>Phillips v. Ash</u>, 63 Ala. 414, 415 (1879) (explaining that the purpose of an attachment "is, that the jurisdiction of the court, in ulterior proceedings, may be more effectual, and to afford the plaintiff security for the satisfaction of the judgment which he may obtain").

Alabama courts have repeatedly recognized a circuit court's jurisdiction over in rem actions to establish or enforce statutory liens. <u>See</u>

Nelson Weaver Mortg. Co. v. Dover Elevator Co., 283 Ala. 324, 330, 216 So. 2d 716, 721 (1968) ("[A]n in personam judgment against the owner is not a prerequisite to an in rem judgment establishing a lien on the property."); Hagan v. Riddle Co., 209 Ala. 606, 607, 96 So. 863, 864 (1923) (recognizing a court's inherent jurisdiction over "a proceeding in equity, in nature a proceeding in rem, for the subjection of the property to the [statutory lien], when no personal judgment against the lienee is sought" (emphasis added)); Dollins & Co. v. Lindsey & Co., 89 Ala. 217, 219, 7 So. 234, 234 (1890) ("The property which had been attached, and to which statutory claim had been interposed, was in the custody of the law ….").[8]

In fact, a provision of the hospital-lien statutes illustrates the in rem nature of an action to adjudicate the validity and extent of a statutory hospital lien. Section 35-11-373 establishes a circuit court's

---

[8]Again, § 35-11-1, Ala. Code 1975, provides that a statutory hospital lien "may be enforced in the manner provided by statute, if so provided, or by attachment for enforcing liens, or by any similar mode or remedy existing at common law." (Emphasis added.) See also Leader v. Romano, 208 Ala. 635, 637, 95 So. 7, 9 (1923) ("A court of equity has jurisdiction to enforce liens, equitable or statutory, in all cases unless the Legislature, by prescribing a method for the enforcement of a statutory lien expressly or impliedly excludes the remedy in equity."). One such method provided for by law is an in rem action to establish and enforce a statutory hospital lien against property.

jurisdiction to adjudicate matters related to hospital liens attached to personal-injury claims that have been "reduced to judgment in a court having jurisdiction thereof …." But § 35-11-373 does <u>not</u> require that the hospital lienholder be joined as a defendant. Rather, it provides that the "<u>court shall have full jurisdiction to determine the amount due on the lien</u> on proper written petition by any party interested therein …." § 35-11-373 (emphasis added). That provision thus describes a circuit court's authority to adjudicate matters related to the statutory hospital lien because the judgment (with its attached lien) is in the control of the circuit court, regardless of the circuit court's jurisdiction over any of the actual lienholders. In other words, it recognizes an in rem basis for the court's jurisdiction to adjudicate the validity and extent of the liens attached to its judgment.

Here, Puckett's complaint concerned the hospital lien filed against her property. More specifically, she brought an interpleader action, asking to deposit her settlement proceeds with the circuit court and asking that court to determine what portion of the deposited funds -- if any -- was subject to the Board's already-filed statutory hospital lien. In other words, she asked the circuit court to determine the status of

property in its custody (the lien and the settlement proceeds to which the lien was attached). Puckett did <u>not</u> seek to impose any liability on the Board.[9] For these reasons, Puckett's interpleader complaint should be treated as asserting an in rem[10] claim. Because "the named defendant is

_____

[9]Although the claimants to the interpleaded proceeds are referred to as "defendants" under the Alabama Rules of Civil Procedure, <u>see</u> Rule 22(a), Ala. R. Civ. P., the relief sought by Puckett related to the apportionment of the settlement proceeds within the jurisdiction and control of the circuit court. "This Court is committed to the proposition that it will treat a motion (or other pleading) and its assigned grounds according to its substance." <u>King Mines Resort, Inc. v. Malachi Mining & Mins., Inc.</u>, 518 So. 2d 714, 718 (Ala. 1987). Thus, Puckett's action is most accurately characterized as an "in rem" action with respect to the disputed settlement proceeds. <u>See</u> <u>Green v. City of Montgomery</u>, 55 So. 3d 256, 262 (Ala. Civ. App. 2009) ("We do not believe that merely naming the City or its officers in the caption of the complaint converted what was essentially an <u>in rem</u> or <u>quasi in rem</u> proceeding with respect to the seized currency into a personal action against the named defendants ....").

[10]Other jurisdictions have similarly recognized that such interpleader actions amount to in rem actions, and this would especially be true when there is a statutory lien attached to the interpleaded property. <u>See</u> <u>Saint Alphonsus Reg'l Med. Ctr. v. Bannon</u>, 128 Idaho 41, 44, 910 P.2d 155, 158 (1995) ("[A]n action to foreclose a lien is an <u>in rem</u> action, for which jurisdiction is determined by the <u>situs</u> of the property against which foreclosure is sought."); <u>see</u> <u>also</u> <u>Shelby Cnty. Healthcare Corp. v. Dietitian Assocs., Inc.</u>, No. 13-2087-STA-tmp, June 25, 2013 (W.D. Tenn. 2013) (not published in Federal Supplement) ("Plaintiff in this case is currently in possession of funds to which multiple parties assert a claim or interest and which Plaintiff seeks to interplead into the Court's registry. This appears to be a purely in rem matter ...." (footnote omitted)); <u>Jayko v. Fraczek</u>, 359 Ill. Dec. 433, 445-46, 966 N.E.2d 1121,

property" in an in rem action, <u>Black's Law Dictionary</u> 38 (11th ed. 2019), the circuit court can properly exercise in rem jurisdiction over Puckett's interpleader action without violating State immunity. <u>See</u>, <u>e.g.</u>, <u>Berger v. Pennsylvania Department of Revenue (In re Berger)</u>, 600 B.R. 491, 505 (Bankr. W.D. Pa. 2019), aff'd, Civil Action No. 2:19-cv-00417, Oct. 21, 2019 (W.D. Pa. 2019) (not published in Federal Supplement) ("Beneath the costume, the truth remains: determining rights in a piece of property is properly an <u>in rem</u> proceeding. [The Pennsylvania Department of] Revenue therefore <u>has no sovereign immunity to raise in these proceedings</u>." (emphasis added)).

---

1133-34 (Ill. App. Ct. 2012) (applying Illinois law to conclude that "$30,000 settlement proceeds were a <u>res</u> and, thus, the adjudication of [the] statutory lien on that property was an <u>in rem</u> proceeding for which personal service on and personal jurisdiction over the health care provider was unnecessary"); <u>National Union Fire Ins. Co. of Pittsburgh, Pa. v. Kunin</u>, No. 86 CIV. 7070 (LLS), Aug. 24, 1988 (S.D.N.Y. 1988) (not published in Federal Supplement) ("The state interpleader action is an <u>in rem</u> proceeding where the state court will establish its jurisdiction by gaining control over the collateral."); <u>Zellen v. Second New Haven Bank</u>, 454 F. Supp. 1359 (D. Conn. 1978) (holding that interpleader action seeking determination of rights in stock and promissory note considered an in rem action in which court acquires jurisdiction through control over the disputed property); and <u>McCallum v. Baltimore & Ohio R.R.</u>, 379 Ill. 60, 69, 39 N.E.2d 340, 344 (1942) (recognizing court's in rem jurisdiction to adjudicate liens against settlement funds that were deposited with the court).

3. Alabama law recognizes that State immunity does not prohibit courts from considering <u>defenses</u> to legal claims <u>asserted by the State</u>

As an additional basis for concluding that State immunity does not deprive the circuit court of jurisdiction over Puckett's complaint, I note that our precedents clearly recognize a private citizen's right to seek judicial review of a claim asserted <u>by</u> the State.

In <u>Ex parte State ex rel. Attorney General</u>, 245 Ala. 193, 16 So. 2d 187 (1943) ("<u>Ex parte Attorney General</u>"), the Alabama Department of Revenue issued a writ of execution against a taxpayer's personal property to collect a final assessment of taxes owed by the taxpayer. After that writ was executed by levying on goods allegedly owned by the taxpayer, a third party asserted a claim to the levied property. The State of Alabama then filed a motion to dismiss the claim asserted by the third party, arguing that his claim was "in effect a suit against the State of Alabama in violation of section 14 of the Constitution of Alabama." 245 Ala. at 195, 16 So. 2d at 188. This Court, however, rejected the State's claim, reasoning that,

> "[w]hen a claim is filed under the provisions of the statutes, the plaintiff in the process [i.e., the State] becomes the actor, and on him rests the burden of proving the affirmative fact asserted by the levy of the process, that the

25

> property levied on is the property of the defendant in the process, and subject to its satisfaction. <u>The claim suit seeks no affirmative relief against the State</u>, and its final solution can neither affect the interest of the State nor take away any of its property. Its interposition is <u>not violative</u> of section 14 of the Constitution."

245 Ala. at 196, 16 So. 2d at 189 (emphasis added).

Our decision in <u>Ex parte Attorney General</u> recognized that, "[t]o enforce its rights or redress its wrongs, as a political corporation, a state may ordinarily avail itself of any remedy or form of action which would be open to a private suitor under similar circumstances." 245 Ala. at 195, 16 So. 2d at 188. We, however, emphasized that the State's "right to relief is usually determined in accordance with, the ordinary rules of law which have been established for the administration of justice between private litigants." <u>Id.</u>; <u>see</u> <u>also</u> § 6-5-1(c), Ala. Code 1975 ("Actions commenced by the state are to be governed by the same rules as in actions between individuals.").

<u>Ex parte Attorney General</u> is remarkably similar to this appeal. There, the State executed the writ and levied on property belonging to the taxpayer (that is, the sheriff seized the goods). 245 Ala. at 195, 16 So. 2d at 188. Then, a third party with an interest in the goods objected, claiming priority, and filed suit pursuant to a provision of the applicable

26

statute that granted the third party a right to try his claim to the property. Id. Likewise, here, by filing it statutory hospital lien in the probate court, the Board took affirmative action to enforce the lien attached to the proceeds of Puckett's personal-injury claims against the tortfeasor and insurers. Then, Puckett elected to use a remedy granted by the applicable statutory scheme, see § 35-11-1, placing those proceeds in the custody of the circuit court and seeking a judicial determination regarding the validity and extent of the Board's perfected lien (just like the third party in Ex parte Attorney General, who contested the enforceability of the Department of Revenue's asserted lien interest in the goods that had been levied on).

Accordingly, Ex parte Attorney General -- and other decisions of this Court -- recognize that State immunity does not prevent courts from (1) applying the "ordinary rules of law" to adjudicate a legal claim asserted by the State, 245 Ala. at 195, 16 So. 2d at 188, or (2) granting a private litigant relief on defenses to a claim asserted by the State. See State v. Gill, 259 Ala. 177, 66 So. 2d 141 (1953).[11] Likewise, the result in

_____

[11]In State v. Gill, 259 Ala. 177, 66 So. 2d 141 (1953), the State filed a quiet-title action seeking a determination that it owned land that had artificially accreted on the defendant's property. The defendant answered

the State's complaint, alleging that he owned the artificially accreted land and asking the court to construe his answer as a counterclaim against the State. The court granted the defendant relief on his counterclaim and declared that title to the accreted land was held by the defendant.

On appeal, this Court acknowledged that the court below could not have properly granted the defendant relief on his counterclaim without running afoul of the State-immunity doctrine. We, however, nevertheless affirmed the lower court's judgment declaring that title to the property was vested in the defendant after concluding that relief could have been properly granted to him on his answer. As we explained:

"The decree of the lower court must however be corrected in one respect. [The defendant] was granted relief under the cross-bill filed by him. Under section 14 of the Constitution of Alabama of 1901, the state cannot be made a defendant in any court of law or equity and this provision of the constitution is as applicable to cross-bills seeking affirmative relief against the state as to original bills. Holmes v. State, 100 Ala. 291, 14 So. 51 [(1893)]. However[,] the state brought the original bill in this case and under the statute the defendant must specify in his answer the title, claim, interest or encumbrance which he claims with reference to the property described in the original bill. This is what was done in the present case and while no relief can be granted [the defendant] on his cross-bill, it is proper to recognize on his answer his title to the property, if he has title. Whittaker v. Van Hoose, 157 Ala. 286, 47 So. 741 [(1908)]. We have shown that he does have title to the property and recognize it. In other words, instead of granting him relief on a cross-bill, relief is granted to him on his answer and this is no violation of the constitutional provision."

State v. Gill, 259 Ala. at 183, 66 So. 2d at 145-46 (emphasis added).

28

Ex parte Attorney General is consistent with the conclusion above that in rem jurisdiction would exist over those seized goods, just like in rem jurisdiction exists here over the statutory hospital lien and the attached settlement proceeds.

Further, the Board's filing its hospital lien in the probate court gave rise to new statutory rights and exposed Puckett -- and the other interested parties -- to additional liability under § 35-11-372. In other words, the effect of that filing was not merely to provide notice of its in rem claim against property belonging to Puckett. Rather, by perfecting its hospital lien in the manner prescribed by § 35-11-371, the Board was taking affirmative action to acquire the right, and to enforce the remedy, set forth in § 35-11-372. See Ex parte Infinity S. Ins. Co.,737 So. 2d at 466 ("Upon perfection of the lien in the manner provided in § 35-11-371, the hospital's lien is protected, pursuant to § 35-11-372, from impairment by one settling an action or claim without obtaining a release or satisfaction of the lien.").

In this respect, a hospital's filing of a verified statement of lien in the probate court is also analogous to the filing of a notice of lis pendens, which "'effectively prevents the property's transfer until the litigation is

29

resolved or the lis pendens is expunged.'" Ex parte State Dep't of Revenue, 886 So. 2d 817, 821 (Ala. Civ. App. 2003) (quoting Kerns v. Kerns, 53 P.3d 1157, 1164 n.6 (Colo. 2002)).

Furthermore, the Board took this affirmative action to enforce its statutory rights in a division of Alabama's Unified Judicial System. In other words, the Board invoked its rights under a particular statutory scheme created by the Alabama Legislature and did so by availing itself of the Alabama probate courts. The probate courts are part of the Unified Judicial System, just like circuit courts. As the Alabama Constitution clearly states,

> "the judicial power of the state shall be vested exclusively in a unified judicial system which shall consist of a supreme court, a court of criminal appeals, a court of civil appeals, a trial court of general jurisdiction known as the circuit court, a trial court of limited jurisdiction known as the district court, a probate court and such municipal courts as may be provided by law."

Article VI, § 139(a), Ala. Const. 2022 (emphasis added).

For these reasons, this Court should construe the Board's filing of a verified statement of lien in the probate court as the initiation of a statutory action to enforce the rights and remedies created by the hospital-lien statutes. And, in accordance with our prior decisions, the

Board's ability to avail itself of those rights and remedies should be governed by the ordinary rules of law that govern statutory hospital liens asserted by private hospitals. See Ex parte Attorney General, 245 Ala. at 195, 16 So. 2d at 188. Crucially, those ordinary rules of law recognize a patient's right to seek review of the validity and extent of a statutory hospital lien in a judicial proceeding. See § 35-11-1; § 35-11-373.

Further, the hospital-lien statutes create a lien only for the "reasonable charges of hospital care," § 35-11-370 (emphasis added), and authorize the circuit court to review whether a lien complies with the necessary statutory requirements. See § 35-11-373. If the Legislature had intended to allow a hospital's recovery of any amount it chooses to charge a patient, it could have done so by omitting the term "reasonable" from § 35-11-370.

In short, the Legislature passed the hospital-lien statutes as an integrated statutory scheme; the Board cannot affirmatively invoke parts of that statutory scheme when using Alabama's Unified Judicial System to establish and enforce certain statutory rights but reject the corresponding duties, conditions, and procedures set forth in other parts of that statutory scheme.

31

Moreover, the Board's construction of the hospital-lien statutes raises serious constitutional problems -- problems this Court should attempt to avoid if possible. Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 10, 18 So. 2d 810, 815 (1944) ("[I]t is the duty of the courts to adopt the construction of a statute to bring it into harmony with the constitution, if its language will permit.").

Puckett's interest in her settlement proceeds is clearly a property interest entitled to due-process protections. See Armstrong v. United States, 364 U.S. 40 (1960) (holding that a lien on personal property is "property" for due-process purposes); Fuentes v. Shevin, 407 U.S. 67, 82 (1972) ("[O]pportunity for [a] hearing must be provided before the deprivation [of the significant property interest] at issue takes effect.").

To pass constitutional muster, the hospital-lien statutes should provide a patient with notice and an opportunity to be heard before any significant deprivation of the patient's interest in settlement proceeds takes effect. See Fuentes, supra. Here, however, the Board asks us to conclude that the hospital-lien statutes deny patients any opportunity to dispute the validity and extent of a perfected lien asserted by a State agency. Further, the Board's construction would also effectively prohibit

those patients from settling their claims unless the State agency releases its disputed lien (again, without an opportunity for a hearing). A State agency's filing of a statutory hospital lien clearly encumbers and impairs a patient's interest in the timely availability of his or her entire settlement recovery. Accordingly, the Board's proposed construction of the hospital-lien statutes, and the application of our State-immunity doctrine in this case, is untenable.[12]

Based on the above, I believe that Puckett's interpleader complaint[13] should be construed as asserting a <u>defensive</u>, in rem claim in

---

[12]To be clear, I am not ready to conclude that the Board's attempt to enforce its statutory hospital lien against Puckett's property, while simultaneously denying Puckett a meaningful opportunity to dispute that lien, renders the hospital-lien statutes unconstitutional. Instead, I believe that we should adopt a reasonable construction of the hospital-lien statutes that would avoid this significant problem. This potential constitutional argument was not raised or argued in the briefs to this Court, and I would therefore leave resolution of this question for future cases in which these constitutional issues can be fully developed. For instance, the other potential judicial-review procedures discussed in Part II, <u>infra</u>, may (or may not) be constitutionally sufficient.

[13]In the bankruptcy context, one Delaware court has explained that,

"[i]n the context of interpleader, courts have held that the fact that a debtor is a nominal defendant does not mean that an action is barred by the automatic stay. For example, in <u>Price & Pierce [International Inc. v. Spicers International Paper Sales, Inc.</u>, 50 B.R. 25 (S.D.N.Y. 1985)], the District

the statutory action commenced by the Board (to enforce its hospital-lien claim). See McCrary v. Chase, 71 Ala. 540, 542 (1882) ("The contestation of a claim of exemptions is essentially a suit, in which the plaintiff causing the levy is the actor. The institution of the suit is the levy." (emphasis added)). Because private citizens are entitled to respond to -- and seek judicial review of -- such claims asserted by the State, I conclude that the State-immunity doctrine does not bar the circuit court's

Court for the Southern District of New York held that an interpleader action in which the debtor was named as a defendant could proceed notwithstanding the automatic stay. There, the party holding the funds -- as to which both the debtor and another party claimed an interest -- paid the funds into the court's interpleader fund, and named both of the claimants as nominal defendants to permit the court to determine which of them was entitled to the funds. The court found the interpleader case was less obvious than one where the debtor was plaintiff and the automatic stay clearly would not apply. But even so, the court ruled that 'the right to pursue an interpleader action is not affected by the fact that one of the claimants has filed a petition in bankruptcy' since '[a]ny broader reading of § 362 would not serve the purposes of the section and would unduly handicap the efforts of [the other parties] to resolve this dispute.' [Price & Pierce, 50 B.R. at 26.] In the context of interpleader, then, courts look beyond who is nominally the plaintiff and the defendant and permit the interpleader to go forward where the debtor is simply one of several claimants on a disputed fund."

In re AP Orangevale, LLC, No. 23-10687, Feb. 21, 2024 (Bankr. D. Del. 2024) (footnotes omitted) (not selected for publication).

jurisdiction over Puckett's interpleader action disputing the validity and extent of the Board's hospital lien.

II.  Possible Alternative Procedural Mechanisms

I note that -- even assuming that State immunity precludes judicial review of Puckett's interpleader complaint -- there may be other possible alternative vehicles for disputing the Board's statutory hospital lien in this case.

a.  Intervention in Lien-Impairment Action

In its lien-impairment action against the insurance carriers, the Board may recover the "reasonable charges for the hospital care, treatment, and maintenance" of Puckett. § 35-11-372. Further, the insurance carriers' "[s]atisfaction of any judgment rendered in favor of [the Board]" operates as a satisfaction of the lien against Puckett's settlement proceeds. § 35-11-372(b). Because the settlement reached between Puckett and the insurance carriers was apparently subject to the Board's hospital lien, Puckett would appear to have an interest[14] in disputing the validity and propriety of the charges underlying the

_____

[14]I use the phrase "appear to have an interest" because the settlement agreement is not part of the record before this Court.

35

Board's hospital lien against the proceeds of the settlement in her favor.

However, the Board did not name Puckett as a defendant in its lien-impairment action. Thus, Puckett might seek to intervene as a matter of right or, in the alternative, permissively in the lien-impairment action to protect her interest in the settlement proceeds. See Rule 24(a), Ala. R. Civ. P. (recognizing intervention as a matter of right "when [an] applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest ....").

b.  Action Against State Officials

In Ohio Valley Conference v. Jones, [Ms. SC-2022-0930, May 19, 2023] ___ So. 3d ___ (Ala. 2023), this Court recognized that actions against State officials "'"under the Declaratory Judgments Act, Ala. Code 1975, § 6-6-220 et seq., seeking construction of a statute and its application in a given situation"'" and actions seeking injunctive relief from State officials alleged to have "'"acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law"'" do not come within the prohibition of § 14. ___ So. 3d ___ (citations omitted).

Without deciding the question, Puckett might consider commencing an action against members of the Board in their official capacities that asserts claims falling within the parameters of those "exceptions" to § 14 immunity. Of course, this seems like an artificial solution when the Board itself has filed a lien in the probate court. Moreover, based upon our prior precedent discussed above, it is not the way that the validity and extent of hospital liens have routinely been litigated.

c.  Section 35-11-373, Ala. Code 1975

As discussed above, pursuant to § 35-11-373, "a trial court may exercise jurisdiction over a lien in any case in which the claim made the subject of the lien 'has been reduced to [a] judgment.'" University of S. Alabama Hosps. v. Blackmon, 987 So. 2d 1138, 1143 (Ala. Civ. App. 2007) (emphasis added). In other words, if a patient files a lawsuit against a tortfeasor and receives a judgment, that statute provides a method for the trial court to adjudicate the validity and extent of the hospital lien, even if the lienholder is not a party to that action. However, notice to the lienholder should be provided, and, of course, the lienholder has the opportunity to intervene.

Without deciding the question, if the Board was a hospital

lienholder in such a circumstance, it might not be a violation of State immunity for the trial court to follow this statutory process and determine the validity and extent of the hospital lien (and the Board could intervene if it chose). See § 35-11-373. In my view, as explained above, the process described in § 35-11-373 indicates that the circuit court has in rem jurisdiction over the property that is subject to the Board's lien.

Puckett, however, did not initiate a legal action against the at-fault driver in this case. Instead, Puckett settled the dispute out of court. Such an out-of-court settlement saves Puckett attorney fees and costs (and time), saves the court system resources, and even provides for a potentially greater recovery for the hospital lienholder. However, it leaves Puckett without the possible protection afforded by § 35-11-373. The same problem might occur even if Puckett had filed suit but had settled before the entry of a final judgment. Settlements that are not reduced to final judgments would seem to be an unintentional gap in this provision of the hospital-lien statutes concerning jurisdiction over hospital-lien disputes, and the Legislature may wish to consider providing patients with a statutory method, expressly described as an in

rem remedy, for seeking judicial review in such circumstances.[15]

III. Why This Case Matters

The hospital-lien statutes exist so that Alabama hospitals can be paid for their services. However, the question of how much they are entitled to be paid under the hospital-lien statutes can be extremely complicated. According to some commentators, hospitals are misapplying the hospital-lien statutes to pursue recovery of their full charge-master rates "in [the] hopes of receiving a windfall." Michael K. Beard & Dylan H. Marsh, Arbitrary Healthcare Pricing and the Misuse of Hospital Lien Statutes by Healthcare Providers, 38 Am. J. Trial Advoc. 255, 285 (2014).

In other words, according to those commentators, there is the sticker price and there is the real cost of the treatment. The sticker price, they say, can be many times what a medical insurer actually pays to the hospital, and they argue that the health-care provider should only

_____

[15]Further, the Board's position has the potential effect of steering injured patients toward undesirable legal options for resolving disputes of this kind. For instance, Puckett might have followed an elaborate, but incredibly awkward and wasteful, process of (1) commencing a civil action against the alleged tortfeasor and insurers, (2) immediately settling via a consent judgment, and (3) then attempting to take advantage of judicial review pursuant to § 35-11-373. I provide no opinion on whether this would be an effective strategy.

recover the real cost -- not the sticker price -- of the medical care through a hospital lien. Some jurisdictions have addressed these price-disparity issues when applying their hospital-lien statutes. See, e.g., In re North Cypress Med. Ctr. Operating Co., 559 S.W.3d 128, 132 (Tex. 2018) (discussing "the 'two-tiered' healthcare billing structure that has evolved over the past several decades" and concluding that evidence of discounted amounts accepted by hospital was relevant to court's determination of the reasonableness of the charges secured by a statutory hospital lien).

However, hospitals have strongly disagreed and have publicly emphasized the rapidly rising costs of providing their vital, and lifesaving, services. See Sherry Slater, Parkview defends self on lien usage, The Journal Gazette (Feb. 3, 2021) (at the time of this decision, this article was available at: https://www.journalgazette.net/local/parkview-defends-self-on-lien-usage/ article_7b7ae29e-fbe2-5965-9f83-7e68c042c4c1.html); Tara Bannow, Hospitals and Patients' Attorneys Spar Over Lien Practices, Modern Healthcare (May 25, 2019) (at the time of this decision, this article was available to subscribers at: https://www.modernhealthcare.com/ providers/hospitals-and-patients-attorneys-spar-over-lien-practices).

To be clear, I take no position on this hotly contested policy question. Indeed, it is not the role of the courts to decide large policy questions. Instead, it is the role of the courts to justly resolve individual disputes, case-by-case, in an efficient and economical manner, based upon the particular facts applicable to each case. And, it is virtually certain that these pricing disputes will be a continuing, and substantial, source of controversy between individual hospitals and individual patients.

The hospital-lien statutes envision that such individual parties would have good-faith disagreements about what constitute the "reasonable charges" for the particular services rendered, and they set forth a process for resolving those disagreements, which includes an opportunity to have court resolution of such individual disputes.

The Legislature designed this statutory process to protect both the individual patient and the hospital. Taking away a patient's right to seek redress in court in his or her individual case disrupts this carefully designed statutory scheme and will produce outcomes the Legislature did not intend. The Board seeks to pick and choose parts of this carefully designed and balanced statutory scheme, but this is not what the

41

Legislature passed, and it is not what the Legislature intended.[16]

What happens if a State-owned hospital can prevent a patient from asking a court to resolve his or her good-faith disagreement with the hospital? First, it means delaying payment to the patient, as is apparent in this case. Second, it likely gives State-owned hospitals more leverage. Without intending to suggest any view on what is taking place in this appeal, a State-owned hospital could simply say "no" and hold out for a higher payment, since the patient will be prevented from seeking a judicial determination of the reasonable amount of the hospital's lien and may also be effectively prohibited from even reaching a settlement with the at-fault tortfeasor in the meantime. See § 35-11-373.[17]

Here, I am particularly concerned that the Board is pursuing a lien-impairment action against the insurers while, at the same time, resisting

---

[16]The intent of the Legislature is reflected in the text of the statutory scheme that governs hospital liens -- text that the Board claims should not apply to the lien it seeks to enforce.

[17]I also worry that the logic of the Board's State-immunity argument might have significant consequences in other areas of law. Would the Board be able to file a real-property lien in the probate court and then raise State immunity in a quiet-title action brought by the landowner? Would it be able to prevent any hearing, at any time, in any forum, regarding such a real-property lien?

the effort by the patient (whose counsel currently possesses the settlement proceeds) to resolve this dispute. It is difficult to understand the intent of these apparently inconsistent efforts, particularly because the settlement agreement was not included in the record before this Court. Does the Board contend that Puckett settled too cheaply and therefore seek to recover more than the settlement amount? This seems particularly unlikely given the admission in the Board's brief that the settlement "represent[ed] the policy limits for all applicable coverages." Board's brief at 6. Perhaps there is some strategic advantage to being the plaintiff in the lien-impairment action against the insurers? Must Puckett reimburse the insurers if the Board wins its lien-impairment action? Will these circumstances somehow provide the Board with an opportunity for double recovery? Would the insurers have less of an incentive to contest the amount of the hospital lien? Or is there some other, not readily apparent, litigation strategy at play? On the other hand, Puckett has not yet attempted to intervene in the Board's lien-impairment action against the insurers. Again, I would have afforded the parties an opportunity to fully explain their actions at oral argument before adjudicating Puckett's appeal.

43

One thing, however, is clear -- dismissing Puckett's complaint is not an efficient solution to the problem confronting the parties or our court system. It seems apparent that all parties should be before one judge to resolve this dispute. Again, it is a fundamental goal of our Alabama court system "to secure the just, speedy and inexpensive determination of every action." See, e.g., Rule 1(c), Ala. R. Civ. P. ("These rules shall be construed and administered to secure the just, speedy and inexpensive determination of every action.").

Finally, two big-picture points. First, because this Court affirms the circuit court's dismissal of Puckett's complaint on the basis of State immunity (that is, lack of subject-matter jurisdiction), that disposition does not reach the merits of this dispute. In other words, both parties still retain all of their arguments about the validity and extent of the hospital lien. It is virtually certain that more litigation regarding those issues is forthcoming.

Second, because this Court is affirming without an opinion, the decision today is also not precedential. See Rule 53(d), Ala. R. App. P. ("An order of affirmance issued by the Supreme Court by which a judgment or order is affirmed without an opinion … shall have no

44

precedential value …."); Justice Jay Mitchell & Lars A. Longnecker, How to Read A Vote Line of the Alabama Supreme Court, 84 Ala. Law. 146, 148 (2023) ("[O]rders disposing of a case have no precedential value outside of that particular case."). In other words, in any future case, the Board will need to make all of these arguments again, and any patient opposing the Board will have the opportunity to fully brief the opposing arguments.

For both of these reasons, it is unclear to me what the Board has gained from its novel and curious litigation strategy. Because I cannot conclude that State immunity barred the circuit court's jurisdiction over Puckett's claims, I respectfully dissent.

Stewart, J., concurs.